[Cite as *State v. France*, 2012-Ohio-1003.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-68 |
| EDDIE FRANCE | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
Court of Common Pleas, Case No.
2011CR0088D

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     March 8, 2012

APPEARANCES:

For Plaintiff-Appellee

JAMES J. MAYER, JR.
Richland County Prosecutor
38 South Park Street
Mansfield, OH 44902

For Defendant-Appellant

WILLIAM C. FITHIAN, III.
111 N. Main Street
Mansfield, OH 44902

*Gwin, P.J.*

{1} On January 23, 2011, appellant, Eddie France, engaged in a physical altercation with his sister, Ranada France and his brother Leon France, which ultimately ended in appellant stabbing Leon France in the shoulder. As a result, appellant was indicted with two counts of domestic violence, both misdemeanors of the first degree, one count of felonious assault and one count of violating a civil protection order. The count of violating a protection order was dismissed by the state prior to trial.[1]

{2} On March 2, 2011, appellant filed multiple pro se motions for discovery. The same discovery requests were filed by his trial counsel. A trial was scheduled for April 7, 2011.

{3} On April 6, 2011, the trial court held an oral hearing in response to several messages the court had received from appellant expressing his desire to fire his trial attorney. Appellant contended that appellant had not received discovery and believed that his trial attorney was not working in his best interest.

{4} Counsel indicated that he had filed discovery motions and that he had taken the discovery to the jail and had attempted to review the discovery with appellant page by page. Further, after his conversations with appellant, counsel had investigated appellant's leads, spoken to and subpoenaed witnesses on behalf of appellant and obtained evidence pertinent to appellant's defense. Appellant's trial counsel indicated that he was prepared to proceed with trial.

---

[1] A Statement of the Facts underlying appellant's conviction is unnecessary to our disposition of this appeal. Any facts needed to clarify the issues addressed in appellant's Assignment of Error shall be contained therein.

**{5}** The trial judge explained to appellant that he was not entitled to have a copy of the discovery and that the discovery rules did not allow certain items to be given to appellant. The court found no indication that appellant's trial attorney was not performing his duties competently and in appellant's best interest. At the end of the hearing, appellant agreed to allow his trial counsel to continue to represent him. The trial was continued to April 21, 2011. This trial date was continued to June 9, 2011 at the request of appellant's trial attorney due to a death in counsel's family.

**{6}** On June 8, 2011, appellant filed a pro se motion for a change of venue. Trial began on June 9, 2011. Before the jury was brought into the courtroom, a lengthy discussion on the record took place regarding appellant and his behavior.

**{7}** Appellant's trial counsel indicated to the court that, while he was ready to proceed to trial, he had difficulty communicating with appellant due to appellant's hostile and combative behavior. Counsel told the trial judge that counsel had difficulty with appellant because appellant did not want to go over discovery and constructively prepare for trial but instead wanted to argue that he should have never been charged in the first place. Counsel stated that he had last visited appellant on April 11, 2011 and at that time appellant had become belligerent and threatened to kill his attorney, the officers at the jail and everyone involved in the case.

**{8}** The court next heard from Lieutenant Franklin from the Richland County Jail. Lt. Franklin indicated that appellant told the staff at the jail that he was refusing to go to trial, that he wanted a new attorney, new judge and a new venue. Appellant told the jail staff "you guys are going to have to taze me to get me to come to court, and we're not going to have a trial today, I can guarantee you that." Lt. Franklin was able to

talk appellant into coming to court; however, appellant refused to wear civilian clothing. Appellant was dressed in a plain green jumpsuit, not the usual striped jumpsuit with the jail logo on the back. In addition, the court made arraignments to hide appellant's shackles.

{9} Appellant was brought into the courtroom. He then attempted to fire his attorney. The court denied appellant's request stating that appellant had not shown cause why counsel could not represent him. Next, appellant asked the judge to recuse himself stating that the judge was biased; appellant cited a sentence he received from the trial court in 1994. The judge indicated that he did not recall the case. In response appellant indicated that he had filed disciplinary actions against the trial judge and his attorney. The judge noted that he was unaware of any such filings.

{10} The trial judge warned appellant that his behavior could have a negative effect on the jury. The court also told appellant that the trial was going forward with his attorney and indicated that appellant could be in the courtroom or not. The court attempted to reason with appellant indicating that it would be better for him to be present and assist his attorney; however, the judge warned appellant that if he could not behave he would forfeit his right to be present in court.

{11} The trial judge asked appellant if he could calm down and proceed to trial. Appellant told the court he would not sit down at the defense table; he refused to pick a jury and continued his tirade against his trial counsel and the court. Appellant's trial attorney requested that appellant be removed from the courtroom because he was being disruptive and because he was afraid of the negative impact the appellant's behavior would have on the jury. The trial court again asked appellant if he could be

quiet during voir dire. Appellant replied that he would be quiet when he was given different counsel.

{12} The trial court indicating that the court would begin voir dire and informed appellant he would be removed at the first outburst in front of the jury. Appellant interrupted and continued his tirade about how everyone was against him and intent on sending him to prison. Appellant's attorney objected to the court's recommendation, believing that any outburst by appellant would poison the jury pool. The court indicated that it was obvious that appellant was trying to disrupt the trial. Appellant agreed that he was purposely being disruptive because he wanted new counsel. Appellant was then removed from the court.

{13} The court asked counsel if he wanted appellant to be able to view court via the television monitor, warning that if appellant were able to view the court that the jury would be able to view him. Appellant's trial counsel told the trial judge that he did not want appellant to be seen by the jury.

{14} The court gave the jury instructions at the beginning of trial indicating that appellant had a right not to be present in court, that appellant had chosen not to be present in court and that they were not to be influenced in any way by appellant's absence.

{15} On the second day of trial, the trial court once again asked appellant whether he would behave in court. Appellant continued his tirade from the previous day and continued to assert that he was not being unruly, just speaking his mind and defending himself. When asked if he was going to behave himself, appellant asked the judge if he would behave himself. The appellant finally agreed that he would behave if

he were allowed in the courtroom. The trial judge warned appellant, not only would he be removed from the courtroom if there were any outburst on his part, but also indicated that the court would overrule any motions for mistrial made by the defense based on appellant's behavior. Appellant was allowed to return to the courtroom and participate in the second day of trial.

{16} The state's first witness of the day was appellant's sister, who was also one of the alleged victims, Ranada France. Appellant had one outburst during Ms. France's testimony, shouting out that she was lying. The trial court warned appellant that a second outburst would be cause for removal. Appellant's attorney moved for a mistrial and the court denied the motion. Appellant did not have any more outbursts during the trial.

{17} The jury found appellant guilty of all three counts. The court found that the Felonious Assault charge and the Domestic Violence charge involving Leon France were allied offenses and sentenced appellant to seven years on the Felonious Assault. The court found the domestic violence involving Ranada France to be a separate offense and found that a consecutive sentence was appropriate. Appellant was sentenced to six months on the charge of domestic violence.

{18} Appellant raises one Assignment of Error:

{19} "I. A COURT MAY PROPERLY EXCLUDE A DEFENDANT FROM ATTENDING TRIAL DUE TO HIS DISRUPTIVE BEHAVIOR WITHOUT VIOLATING THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES. APPELLANT WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHTS UNDER THE CONFRONTATION CLAUSE WHEN HE

WAS NOT AFFORDED AN OPPORTUNITY TO VIEW AND HEAR THE TRIAL PROCEEDINGS BY CLOSED CIRCUIT TELEVISION WHEN THAT TECHNOLOGY IS AVAILABLE. APPELLANT WAS ALSO DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL WHEN HE WAS GIVEN NO OPPORTUNITY TO COMMUNICATE WITH COUNSEL WHILE HE WAS ABSENT."

I.

{20} In his First Assignment of Error, appellant challenges the trial court's ruling excluding him from the courtroom during the first day of his jury trial and not providing him the opportunity to observe the proceedings via closed circuit TV or other electronic media.

{21} A defendant's right to be physically present at every stage of his trial has a longstanding tradition in this country's criminal jurisprudence, with roots in both the Due Process Clause, *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) ("[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"), and the Confrontation Clause of the Sixth Amendment, *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353(1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial"). This right, however, is not absolute, particularly when a defendant "engages in speech and conduct which is so noisy, disorderly, and disruptive that it is exceedingly difficult or wholly impossible to carry on the trial." *Id. See, Gray v. Moore*, 520 F.3d 616, 622(6th Cir. 2008).

**{22}** The Confrontation Clause of the Six Amendment, made applicable to the States by the Fourteenth Amendment, provides "[i]n all criminal prosecutions the accused shall enjoy the right* * * to be confronted with the witness against him." Section 10, Article I of the Ohio Constitution provides that "the party accused shall be allowed * * * to meet the witnesses face-to-face* * *."

**{23}** The Confrontation Clause reflects a preference for face-to-face confrontation at trial. *Maryland v. Craig*, 497 U.S. at 836, 849, 110 S.Ct. 3157, 3165, 111 L.Ed.2d 666(1990); *State v. Self*, 56 Ohio St.3d 73, 77, 564 N.E.2d 446, 450(1990). The preference for face-to-face confrontation must occasionally yield "where denial of such confrontation is necessary to further an important policy and only where the reliability of the testimony is otherwise assured * * *" *Craig,* supra, 497 U.S. at 850, 110 S.Ct. at 3166. (Citations omitted). Section 10, Article I of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment. *State v. Self,* supra, 56 Ohio St.3d at 79, 564 N.E.2d at 453.

**{24}** The United States Supreme Court has stated that one of most basic rights reserved by the Confrontation Clause is a defendant's correlative right to be present in the courtroom in every stage of the trial. *Illinois v. Allen*, *supra*. Section 10, Article I, Ohio Constitution and Crim. R. 43(A) also require presence. Appellant's presence is mandated unless he waived his right or there existed extraordinary circumstances requiring sequestration, such as misconduct. *State v. Williams*, 6 Ohio St.3d 281, 286, 452 N.E.2d 1323(1983).

**{25}** A defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he

nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. *Allen,* 397 U.S. at 343, 90 S.Ct. at 1060-1061. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with decorum and respect inherent in the concept of courts and judicial proceedings. *Id.*

{26} In the case at bar, appellant does not argue that the trial court was wrong to exclude him from the courtroom based upon appellant's disruptive behavior; rather appellant argues that his rights were violated because he was not able to contemporaneously view the proceedings in the courtroom and communicate with his trial counsel.

{27} In addition to the value of forcing a witness to testify face-to-face with the accused, another "primary interest secured by [the Confrontation Clause] is the right of cross-examination," *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934(1965), which "is critical for ensuring the integrity of the fact-finding process," *Kentucky v. Stincer,* 482 U.S. 730, 736, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). In the case at bar, appellant was not present during the actual cross-examination of his brother who was also one of the alleged victims and therefore could not assist his attorney in following-up to any answers he provided on cross-examination. *Allen,* 397 U.S. at 344, 90 S.Ct. 1057 (noting that "one of the defendant's primary advantages to being present at the trial [is] his ability to communicate with his counsel").

{28} In the case at bar, the following exchange occurred on the first day before the start of appellant's jury trial,

**{29}** THE COURT: [Counsel], you don't want him [the defendant] to watch this on TV, do you? If he's watching on TV he has to be able to be seen on TV.

**{30}** [DEFENSE COUNSEL]: No, I don't because that would be influential as anything.

(1T. at 36).

**{31}** At the conclusion of the first day's proceedings, defense counsel elucidated upon this sentiment,

**{32}** Had I ever been able to have a meaningful discussion with my client we probably would not be in the situation that we're in. Honestly, of all the times that I was over there trying to go through the statements, trying to go through the discovery, trying to point out strategies for defending this case, I could never get any type of meaningful response from him. The only responses I received were, "everybody is lying. They should be charged. I shouldn't be here." Nothing focused on the facts of the case and defending the case…I've never been able to have a meaningful discussion with him.

(1T. at 240-241).

**{33}** We note that in the case at bar appellant was the "architect of his own demise." Under the doctrine of "invited error," it is well settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Smith v. O'Connor*, 71 Ohio St.3d 660, 663, 1995-Ohio-40, 646 N.E.2d 1115(1995) *citing State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 359,1994-Ohio-302, 626 N.E.2d 950(1994). *See, also*, *Lester v. Leuck*, 142 Ohio St. 91,

50 N.E.2d 145(1943) paragraph one of the syllabus. As the Ohio Supreme Court has stated,

> [t]he law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted. It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.

*Lester* at 92-93, quoting *State v. Kollar* (1915), 93 Ohio St. 89, 91, 112 N.E. 196.

**{34}** As soon as appellant told the trial court that he would not be disruptive, he was permitted to return to the courtroom. Appellant's trial counsel did not object to the procedure, nor did he express any inability to conduct an effective cross-examination of the state's first two witnesses.

**{35}** In the case at bar, we find that there was no constitutional error because appellant knowingly and voluntarily waived his presence during the first day of trial by his conduct. See *Diaz v. United States,* 223 U.S. 442, 455, 32 S.Ct. 250, 56 L.Ed. 500 (1912) ("where the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but on the contrary, operates as a waiver of his right to be present"); see also

*Taylor v. United States,* 414 U.S. 17, 19–20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (per curiam) (discussing knowing and voluntary waiver of right to be present at trial as sufficient for constitutionally valid trial in absentia).

{36} In the case at bar, appellant had ample warning of the consequences of his behavior. He was repeatedly warned that the trial would go forward without him unless he promised to behave, and he made a knowing and voluntary choice. If there is no constitutional violation because appellant voluntarily, by his conduct, waived his right to be present, then it follows that there can be no constitutional violation for the court's failure to provide appellant the opportunity to observe the proceedings via closed-circuit TV or other electronic medium. Further, it is clear from appellant's actions that he voluntarily chose not to communicate with his attorney. He cannot now claim error in failing to be afforded that opportunity. Clearly, in the case at bar appellant held the keys to the courtroom door. The trial court allowed him to return as soon as he agreed not to be disruptive. Appellant was permitted to be present during the majority of the trial.

{37} Appellant's sole Assignment of Error is overruled.

{38} The judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Farmer, J., and Wise, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE

[Cite as *State v. France*, 2012-Ohio-1003.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| EDDIE FRANCE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011-CA-68 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Richland County Court of Common Pleas is affirmed.  Costs to appellant.

_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER


_____
HON. JOHN W. WISE