[Cite as *State v. Hoover*, 2019-Ohio-4229.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JOHN WILLIAM HOOVER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 BE 0019**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 17 CR 343

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed in Part. Reversed in Part.
Remanded.

---

*Atty. Daniel P. Fry*, Belmont County Prosecutor, *Atty. J. Flanagan,* Assistant
Prosecutor, Courthouse Annex 1, 147-A West Main Street, St. Clairsville, Ohio 43950,
for Plaintiff-Appellee and

*Atty. Timothy Young*, Ohio Public Defender, *Atty. Michelle Umana,* Assistant Public Defender, The Midland Building, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215,  for Defendant-Appellant.

Dated:
October 10, 2019

**Donofrio, J.**

{¶1}     Defendant-appellant, John Hoover, appeals his conviction and sentence following a jury trial in the Belmont County Common Pleas Court for one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony.

{¶2}     Appellant and his ex-wife, married in 2012 and divorced in 2013.  After their divorce, appellant and the victim were occasionally romantically involved.  In November of 2017, the two were romantically involved and living together.  On the night of November 25, 2017, appellant and the victim went to a bar in Martin's Ferry, Ohio.  While at the bar, appellant consumed numerous alcoholic drinks.

{¶3}     Shortly after midnight on November 26, 2017, appellant and the victim left the bar and went to a grocery store to buy food.  The two then left the grocery store and returned home.  While at home, appellant wanted to have sex with the victim.  When the victim said no, appellant became angry, began punching her in the head, and hit her with a belt.  The victim's two teenage children from a previous relationship called the police and attempted to stop appellant from hitting the victim.  She sustained numerous injuries as a result of the attack.

{¶4}     Officer West from the Martin's Ferry Police Department arrived on the scene and arrested appellant.  Officer West transported appellant directly to the Belmont County Jail.  The victim filled out a petition for a protection order against appellant.  The Belmont County Court, Northern Division granted the victim the protection order on November 29, 2017.  The protection order provided, among other things, that appellant not initiate contact with the victim and stay at least 500 feet away from her.

{¶5}     On January 3, 2018, a Belmont County Grand Jury indicted appellant on one count of felonious assault, a second-degree felony.  On January 11, 2018, the trial court arraigned appellant and appointed appellant counsel from the Belmont County Public Defender's office.

{¶6}     On February 15, 2018, appellant filed a pro se motion for new counsel. Relevant to this appeal, the motion argued for new counsel because: the public defender's office did not receive adequate funding to "mount any type of believable offense," counsel told appellant that he was "pretty much guilty as charged" due to the victim's injuries and appellant's prior criminal record, and counsel opposed appellant's desire to call character witnesses.

{¶7}     On February 20, 2018, the trial court held a hearing where appellant's motion for new counsel was addressed.  Appellant's counsel indicated that there was a difference of opinion in trial strategy between him and appellant.  But counsel said there was not a total breakdown of communication and he believed he could adequately represent appellant.  The trial court asked appellant if there was anything else he wanted to add to the motion to which appellant responded in the negative.  The trial court denied the motion for new counsel and memorialized that ruling in a judgment entry dated February 21, 2018.

{¶8}     The matter proceeded to a jury trial on March 1, 2018.  During voir dire, counsel for plaintiff-appellee, the State of Ohio, asked the prospective jurors if they knew of friends or family involved in a "domestic situation."  Numerous members of the prospective jury pool answered in the affirmative.  One of the prospective jurors, Juror Six, stated that the person he knew in a domestic situation was a direct family member. Juror Six also stated that he formed an opinion about that domestic situation and had "some sympathy on the person that was driven to the point that they did what they did." Juror Six was never asked whether he felt he could be impartial as a juror.

{¶9}     Another prospective juror, Juror One, stated: she knew of a domestic situation, people in the situation confided in her, she was aware of the situation while it was ongoing, and she sided with a particular party.  Appellant's counsel questioned Juror One about this domestic situation.  Juror One was a nurse for 16 years and had people confide in her about various situations over the years.  Juror One "formed an opinion" about the domestic situation she mentioned.  Appellant's counsel did not attempt to question other prospective jurors on domestic situations.  A total of five people with knowledge of previous domestic situations, including Jurors One and Six, were seated on the jury.

{¶10}     The state called five witnesses in its case-in-chief.  The state's theory of the case was that after appellant and the victim returned home on the morning of November 26, 2017, appellant wanted to have sex with the victim.  When she refused, appellant began punching her and hitting her with a belt.  The victim's two teenage sons intervened and called the police.  The victim's injuries included, but were not limited to: a broken nose, missing teeth in her lower jaw, lacerations in and around her mouth, bleeding from her gums, multiple contusions to her head, and bruising under her eyes.

{¶11}     Officer West, one of the state's witnesses, referred to appellant as "Mr. Luckett" twice during his direct examination.  Immediately after the second reference, the trial court held a bench conference with both counsel outside the hearing of the jury where it was discussed that appellant changed his name from Luckett to Hoover when he married the victim.  Appellant's counsel requested that no explanation for appellant's name change be given but the trial court permitted the state to clarify for the jury that appellant and Mr. Luckett are the same person.

{¶12}     Appellant took the stand in his own defense.  He testified that, while at the bar, he had two shots of whiskey and six beers over two-and-a-half hours.  Appellant did not remember leaving the bar, going to the grocery store, or assaulting the victim.  The only thing he remembered was waking up in the Belmont County Jail.  Appellant believed someone drugged his drinks while he was at the bar.

{¶13}     During closing arguments, appellant's counsel argued:

Perhaps [appellant] knew what he was doing when he struck the first or second blow, and then mentally he just slipped out and didn't realize what he was doing the rest of the way.  It is kind of bizarre when you think about the circumstances.

* * *

Now, I know, as I conceded in opening and as I've conceded now, that my client did do something and what he did was wrong.  And whether you believe his testimony about the mental state, to my mind, that's your call.  I am not going to argue that. I am going to argue what I think is a reasonable argument.  And the reasonable argument is this: If you think he is not a good

guy, that's okay. Even people who aren't good guys are entitled to a fair trial. All of us are. And if you think that what he did should not allow him to walk out of this courtroom today as a free man, you have an opportunity to find him guilty of the lesser included offense of simple assault. And although technically I can't concede that he's guilty of anything, I would say in closing that if your decision is that he did this bad thing, but it doesn't quite reach -- it's not quite up to the standard of serious physical harm, which as I said earlier, is usually confined to situations where people use guns and knives and clubs, if it doesn't rise to that, then obviously, he did strike her and he would be guilty of simple assault.

(Trial Tr. 250, 253-254).

{¶14} The jury convicted appellant of felonious assault. The trial court then scheduled a sentencing hearing for March 19, 2018.

{¶15} On March 14, 2018, appellant sent his trial counsel a letter. This letter indicated that appellant had communicated with the victim daily and had sex with her on three occasions while awaiting trial. Both of these were violations of the protection order issued by the Belmont County Court, Northern Division on November 29, 2017. This letter also pointed out what appellant argued were deficiencies in his counsel's representation during trial.

{¶16} At the scheduled sentencing hearing, appellant's counsel gave the March 14, 2018 letter to the trial court. The trial court referenced this letter as one of its sentencing factors. The trial court then sentenced appellant seven years of incarceration.

{¶17} The trial court memorialized appellant's sentence in a judgment entry dated March 20, 2018. Appellant timely filed a notice of appeal on March 28, 2018. Appellant now raises four assignments of error.

{¶18} Appellant's first assignment of error states:

HOOVER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL BLATANTLY VIOLATED ATTORNEY-CLIENT PRIVILEGE TO HOOVER'S DETRIMENT AT SENTENCING. SIXTH AMENDMENT, UNITED STATES CONSTITUTION; SECTION 10

ARTICLE 1, OHIO CONSTITUTION; PROF.COND.R. 1.6 (SENTENCING TR. 2-9).

{¶19}    Appellant argues that his trial counsel breached attorney-client privilege when counsel gave the trial court the March 14, 2018 letter he wrote prior to sentencing.

{¶20}    The first issue in this assignment of error is whether appellant's March 14, 2018 letter to his counsel is protected by attorney-client privilege.  Under the attorney-client privilege, "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 21.   The common-law attorney client privilege "protects against any dissemination of information obtained in the confidential relationship."  *Id.* at ¶ 26.  The only matters protected by the attorney-client privilege are those involving communications between the attorney and the client.  *Kirtos v. Nationwide Ins. Co.*, 7th Dist. Mahoning No. 07-MA-97, 2008-Ohio-870, ¶ 22.

{¶21}    In this case, appellant's March 14, 2018 letter was addressed to his trial counsel.  It contained admissions that appellant violated the protection order issued by the Belmont County Court, Northern Division by contacting and having sex with the victim on multiple occasions.  The letter also pointed out what appellant argued were errors his trial counsel made at trial.  First, the letter states that Officer West testified at trial that it was protocol, if an arrestee had been drinking, to take that arrestee to the hospital to be examined before transporting them to jail.  But appellant said that he was not taken to the hospital.  Second, the letter states that trial counsel failed to raise the fact that appellant was diagnosed with bipolar disorder.

{¶22}    The contents of this letter are protected by the attorney-client privilege.  The letter was a communication from appellant to his trial counsel in counsel's professional capacity.  The letter was sent to counsel's address at the public defender's office by regular U.S. mail in a sealed envelope.  It also concerned counsel's representation of appellant.

{¶23}   The second issue to resolve is whether appellant waived his attorney-client privilege regarding the March 14, 2018 letter.  Appellant argues that none of the discretionary exceptions to attorney-client privilege in Prof.Cond.R. 1.6(b) apply.  The discretionary exceptions to attorney client privilege are: (1) to prevent reasonably certain death or substantial bodily harm, (2) to prevent the commission of a crime by the client or other person, (3) to mitigate substantial injury to the financial interests or property of another that has resulted from the client's commission of an illegal or fraudulent act, in furtherance of which the client has used the lawyer's services, (4) to secure legal advice about the lawyer's compliance with the Rules of Professional Conduct, (5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond in allegations in any proceeding, including any disciplinary matter, concerning the lawyer's representation of the client, (6) to comply with other law or court order, and (7) to detect and resolve conflicts of interest arising from the lawyer's change of employment or from changes in the composition or ownership of a firm. *Id.*

{¶24}   None of the discretionary exceptions of Prof.Cond.R. 1.6(b) apply to the March 14, 2018 letter.  This letter had two facets: admitting to past violations of a protection order relevant to appellant's criminal charge and criticizing counsel's representation at trial.

{¶25}   There is also a mandatory disclosure provision of Prof.Cond.R. 1.6.  A lawyer shall reveal information protected by the attorney-client privilege under applicable law to the extent the lawyer reasonably believes necessary to comply with Rule 3.3 or 4.1.  Prof.Cond.R. 1.6(d).

{¶26}   Prof.Cond.R. 4.1 prohibits lawyers from making a false statement of material fact or law to a third person and requires disclosure of material facts to avoid assisting in illegal or fraudulent activity.  Prof.Cond.R. 3.3(b) requires attorneys to disclose privileged information to the court if that privileged information concerns criminal or fraudulent conduct related to the proceeding.  Neither of these provisions apply to appellant's letter.

Case No. 18 BE 0019

**{¶27}** The state argues that appellant waived the attorney-client privilege of the letter in two ways: by not objecting to the letter's submission during the sentencing hearing and by referencing the letter himself. During the sentencing hearing, appellant said "[a]nd as I stated in the letter, I have made multiple apologies to [the victim] multiple times." (Sent. Tr. 4).

**{¶28}** "R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived." *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487. R.C. 2317.02(A) provides two ways relevant to this appeal that privilege can be waived: by express consent of the client or if the client reveals the context of the communications in a nonprivileged context.

**{¶29}** Neither of the relevant privilege waivers in R.C. 2317.02(A) are met in this case. The record does not show that appellant expressly waived the attorney-client privilege of his March 14, 2018 letter. As for revealing the context of the communication in a nonprivileged context, the "letter" appellant referenced at the sentencing hearing was not the March 14, 2018 letter that he sent to his counsel. The March 14, 2018 letter does not state that appellant apologized to the victim. Appellant stated that he apologized to the victim in a written allocution obtained by Belmont County Adult Probation after trial. Therefore, appellant did not waive the attorney-client privilege of his March 14, 2018 letter.

**{¶30}** At sentencing, the trial court referenced the letter saying "[a]nd then today, you give me a letter that basically says you're going to do whatever you want in life. You were told to have no contact with the victim. You now claim to have had contact with [the victim] every day, including personal relationship, on numerous occasions." (Sent. Tr. 7). The trial court's March 20, 2018 sentencing entry states "[t]he Court notes Defendant's claims as stated in his letter that during the pendency of this case and while no contact Orders were in place, Defendant continued to have contact with the victim. This demonstrates, as does his record, that he will not comply with the rules[.]"

**{¶31}** The trial court indicated at the sentencing hearing and in the sentencing entry that it relied on appellant's letter as one of its sentencing factors. As such, there is a reasonable probability that, but for the trial court's consideration of this letter, the outcome of appellant's sentencing hearing would be different.

{¶32} Appellant argues in this assignment of error that he should be granted a new trial. But the error complained of in this assignment of error occurred during sentencing, not trial. Therefore, the appropriate remedy here is a new sentencing hearing before a new trial court judge.

{¶33} Accordingly, appellant's first assignment of error has merit and is sustained.

{¶34} Appellant's second assignment of error states:

HOOVER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY CONTRADICTED HIS CHOSEN DEFENSE THAT HE TESTIFIED TO AND INSTEAD CONCEDED HIS GUILT. SIXTH AMENDMENT, UNITED STATES CONSTITUTION; SECTION 10, ARTICLE 1, OHIO CONSTITUTION. (TR. 249-255).

{¶35} Appellant argues that his trial counsel's representation at trial was ineffective for two reasons: counsel abandoned his desired affirmative defense of involuntary intoxication and counsel conceded during closing arguments that appellant was guilty.

{¶36} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, appellant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 citing *Strickland.*

{¶37} Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

{¶38} Appellant was convicted of one count of felonious assault. Pursuant to R.C. 2903.11(A)(1), felonious assault is defined as knowingly causing serious physical harm to another.

**{¶39}** During opening statements, appellant's trial counsel indicated that he intended to defend against the charge on two grounds: appellant did not knowingly assault the victim and her injuries did not constitute severe physical harm. During appellant's testimony, he testified that he had reason to believe someone had done something to his drinks while he was at the bar. Appellant concluded his direct examination by testifying that one of his drinks while he was at the bar was drugged. There was no elaboration as to why appellant believed his drinks were drugged or any evidence to support appellant's testimony that his drinks were drugged.

**{¶40}** Beginning with appellant's argument that his counsel conceded guilt during closing arguments, concessions of guilt do not necessarily constitute a deficient performance by counsel. *State v. Simpson*, 2d Dist. Montgomery No. 19797, 2004-Ohio-669, ¶ 24; *State v. Luke*, 5th Dist. Stark No. 2003CA00413, 2004-Ohio-6137, ¶ 30.

**{¶41}** *Simpson* and *Luke* are based on *State v. Goodwin*, 84 Ohio St.3d 331, 703 N.E.2d 1251 (1999). In *Goodwin*, the Ohio Supreme Court held that, in an ineffective assistance of counsel claim, concessions of guilt must be considered on a case-by-case basis. *Id.* at 338. "All of the facts, circumstances, and evidence must be considered." *Id.*

**{¶42}** In this case, the portion of the transcript appellant cites where his counsel conceded guilt is an argument for the lesser included offense of assault. The trial court instructed the jury on assault. Appellant's counsel specifically referenced appellant being guilty of "simple assault." To support this argument, appellant's counsel argued that the victim's injuries did not satisfy the severe physical injury element of felonious assault. This concession of guilt is a reasonable argument for a lesser included offense.

**{¶43}** In addition, appellant's counsel did not abandon the defense as appellant argues. The defense of intoxication generally goes to the element of intent. *State v. LeMasters*, 11th Dist. Lake No. 2007-L-129, 2008-Ohio-2139, ¶ 42. In this case, appellant's counsel stated during opening that the state would not be able to satisfy the knowingly element of felonious assault. Appellant testified on direct examination that he had no memory of assaulting her. During closing arguments, counsel argued that there was a lack of intent for felonious assault by arguing that appellant may not have known what he was doing when he hit the victim.

Case No. 18 BE 0019

**{¶44}** Moreover, a decision regarding which defense to pursue is a matter of trial strategy. *State v. Taylor*, 5th District Richland No. 2005-CA-0112, 2006-Ohio-4064, ¶ 34 citing *State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765 (2001). Instances of debatable trial strategy very rarely constitute ineffective assistance of counsel. *State v. Telego*, 7th Dist. Mahoning No. 16 MA 0171, 2018-Ohio-254, ¶ 30 citing *State v. Thompson*, 33 Ohio St.3d 1, 514 N.E.2d 407 (1987). Trial strategy is only deficient if it is "outside the realm of legitimate trial strategy so as 'to make ordinary counsel scoff.'" *Taylor*, 2005-Ohio-4064, ¶ 34 quoting *State v. Woullard*, 2d Dist. Greene No. 2003CA54, 2004-Ohio-3395. As previously stated, counsel was attempting to argue that there was a lack of evidence of intent and severe physical harm. This is reasonable trial strategy and does not constitute deficient representation.

**{¶45}** Accordingly, appellant's second assignment of error is without merit and is overruled.

**{¶46}** Appellant's third assignment of error states:

> COUNSEL'S PERFORMANCE WAS OBJECTIVELY UNREASONABLE AND PREJUDICED HOOVER, THEREFORE, DENYING HIM A FAIR TRIAL. SIXTH AMENDMENT, UNITED STATES CONSTITUTION, SECTION 10, ARTICLE 1, OHIO CONSTITUTION. (TR. 249-255, 209-211, 34-50, 60-82).

**{¶47}** Appellant argues that his counsel committed numerous errors at trial which renders his assistance ineffective. Specifically, appellant argues that his counsel's representation was ineffective due to: inappropriate arguments made during closing arguments, failure to clarify testimony from the state's witness Officer West, and failure to challenge biased jurors during voir dire.

**{¶48}** As this assignment of error also argues ineffective assistance of counsel, it is subject to the same *Strickland* standard of review previously set forth in appellant's second assignment of error.

**{¶49}** First, appellant reasserts his previous argument that the statements his counsel made during closing arguments constitute ineffective assistance. As these

Case No. 18 BE 0019

statements have already been addressed in appellant's second assignment of error, they do not require additional analysis.

**{¶50}** Second, appellant argues that his counsel was ineffective for not clarifying the testimony of Officer West. Officer West was the first person to respond to the call about a domestic incident occurring at the victim's and appellant's house. Officer West was the one who arrested appellant for felonious assault.

**{¶51}** Officer West testified at trial that he "transported Mr. Luckett to jail." (Trial Tr. 206). Officer West continued by testifying "[the victim] actually, at one point, she thought her son was - - was beat by Mr. Luckett." (Trial Tr. 209). The state followed up with the question "[a]nd I do need - - you actually indicated Mr. Luckett; did you not?" (Trial Tr. 209). At this point, the trial court held a bench conference outside the hearing of the jury with both counsel. Appellant's counsel requested that no explanations about appellant's name change be given. The state requested permission to clarify that Mr. Luckett and appellant are the same person. The trial court permitted the state to clarify and Officer West confirmed for the jury that Mr. Luckett and appellant are the same person.

**{¶52}** Appellant argues that the lack of a clarifying reason why he changed his name, his marriage to the victim, confused the jury and left the jury free to speculate reasons why he changed his name. Appellant points out that, during the bench conference, counsel for the state noted at the first Mr. Luckett reference that "the court reporter's head turn[ed], like, who are we talking about?" (Trial Tr. 210). There was a similar reaction in some of the jurors.

**{¶53}** Appellant argues that the jury's confusion as to appellant's name change with no explanation as to why had the effect of Officer West testifying about character evidence pursuant to Evid.R. 404(B). Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *Id.*

**{¶54}** This argument lacks merit for two reasons. First, appellant's argument presupposes that the jury was confused by the Mr. Luckett references. Supposing that the jury was confused by these references, it also presupposes that the jury inferred

appellant had a criminal record. Moreover, the issue of confusion as to who is Mr. Luckett was cleared up for the jury by the state and Officer West after the bench conference.

**{¶55}** Second, Officer West did not testify about any other act evidence. The Mr. Luckett references coupled with Officer West's clarification that Mr. Luckett is appellant amounted to testimony that appellant changed his name at some point in time. By itself, it does not suggest that Officer West was testifying about evidence prohibited by Evid.R. 404(B).

**{¶56}** Moreover, appellant's counsel's reasons for not suggesting a more thorough clarifying reason as to why appellant changed his name was a matter of trial strategy. As previously stated in appellant's second assignment of error, debatable trial strategy rarely constitutes ineffective assistance. In this case, appellant's counsel stated during the bench conference that he did not want a detailed clarification because he did not want to draw more attention to the fact that appellant had changed his name and risk eliciting testimony regarding appellant's criminal history. This is a reasonable trial strategy.

**{¶57}** Finally, appellant argues that Jurors One, Five, Six, Seven, and Eleven were biased against him and his trial counsel was ineffective for failing to adequately challenge them during voir dire.

**{¶58}** An ineffective assistance claim based on the assertion that counsel allowed the seating of a biased juror must show that the juror was biased against the defendant. *State v. Lyons*, 7th Dist. Jefferson No. 16 JE 0008, 2017-Ohio-4385, ¶ 27 citing *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828.

**{¶59}** Appellant takes specific issue with his trial counsel's decision to not challenge Juror Six. During voir dire, Juror Six stated that he knew a direct family member that was involved in a domestic situation. Juror Six formed an opinion about said domestic situation. That opinion was to have "some sympathy on the person that was driven to the point that they did what they did." (Trial Tr. 43). The state did not ask Juror Six if he felt he could be impartial during trial. Appellant's counsel did not ask Juror Six any questions and did not challenge Juror Six.

**{¶60}** Appellant argues that, pursuant the Sixth Circuit's decision in *Hughes v. U.S.*, 258 F.3d 453 (6th Cir.2001), his trial counsel's decision to allow Juror Six to remain

on the jury constitutes ineffective assistance of counsel. "Absent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel." *Id.* at 460 quoting *Johnson v. Armontrout*, 961 F.2d 748 (8th Cir.1992).

**{¶61}** *Hughes* is distinguishable. The juror at issue in *Hughes*, who was placed on the jury, stated during voir dire "I don't think I could be fair." *Id.* Because that juror was placed on the jury with no further inquiry into the juror's impartiality by the court or counsel, the Sixth Circuit presumed the juror was biased and counsel's failure to challenge the juror resulted in ineffective assistance of counsel. *Id.* In this case, there is no such evidence that Juror Six was biased against appellant.

**{¶62}** As for the remaining jurors appellant argues are biased, they all stated during voir dire that they at least knew of a person who went through a domestic situation. But they all stated that they were either able to put aside their prior knowledge of domestic situations and focus on the case at hand or they had no ill feeling towards appellant. As such, there is no evidence that these jurors were biased against appellant.

**{¶63}** Accordingly, appellant's third assignment of error is without merit and is overruled.

**{¶64}** Appellant's fourth assignment of error states:

THE TRIAL COURT ERRED WHEN IT REFUSED TO APPOINT HOOVER NEW COUNSEL. SIXTH AMENDMENT, UNITED STATES CONSTITUTION; SECTION 10, ARTICLE 1, OHIO CONSTITUTION. (FEBRUARY 20, 2018 HEARING TR. 2-4).

**{¶65}** Appellant argues that the trial court should have made more of an inquiry into the conflict between him and his trial counsel as appellant's motion for new counsel argued that appellant's counsel could not adequately represent him.

**{¶66}** The decision whether to remove court-appointed counsel and allow substitution of new counsel is within to the sound discretion of the trial court; its decision will not be reversed on appeal absent an abuse of discretion. *State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001); *State v. Brown*, 7th Dist. Mahoning No. 12 MA 198, 2014-Ohio-4420, 2014 WL 4960769, ¶ 7. An "abuse of discretion" implies an

arbitrary, unreasonable, or unconscionable attitude on the part of the court. *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

**{¶67}** An indigent defendant does not have a right to choose a particular attorney; rather, such a defendant "has the right to professionally competent, effective representation." *State v. Evans*, 153 Ohio App.3d 226, 2003-Ohio-3475, 792 N.E.2d 757, ¶ 30 (7th Dist.), citing *State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001). "Competent representation does not include the right to develop and share a 'meaningful attorney-client relationship' with one's attorney." *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, 776 N.E.2d 1135, ¶ 12 (1st Dist.).

**{¶68}** In order for the court to discharge a court-appointed attorney, "the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Henness*, 79 Ohio St.3d 53, 65, 679 N.E.2d 686 (1997), quoting *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus. That said, the right to counsel must be balanced against the court's authority to control its docket, as well as its awareness that a "demand for counsel may be utilized as a way to delay the proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (C.A.6 1988); see also *Murphy*, 91 Ohio St.3d at 523.

**{¶69}** Appellant's motion for new counsel dated February 15, 2018 listed numerous reasons for requesting new counsel. The reasons were: the public defender's office did not receive adequate funding to "mount any type of believable offense," counsel told appellant that he was "pretty much guilty as charged" due to appellant's prior criminal record, and counsel opposed appellant's plan to call character witnesses.

**{¶70}** Appellant's motion for new counsel was addressed at a pretrial hearing on February 20, 2018. At this hearing, appellant's counsel indicated that he and appellant had differing opinions on trial strategy and tactics. But appellant's counsel did not believe there was a total breakdown of communication. Counsel stated that he believed he could adequately represent appellant.

**{¶71}** The trial court then addressed every issue appellant raised in his motion for new counsel. The trial court also informed appellant that, if he took the stand in his own defense or called character witnesses, then appellant's criminal history may become

Case No. 18 BE 0019

admissible. The trial court then gave appellant himself the opportunity to speak in support of his motion for new counsel. Appellant declined to speak in support of his motion and stated that his arguments were self-explanatory. The trial court then denied appellant's motion for new counsel.

{¶72} The trial court's denial of appellant's motion for new counsel was not an abuse of discretion. Appellant's counsel indicated during the February 20, 2018 hearing that there was not a breakdown of the attorney-client relationship between him and appellant and counsel believed he could adequately represent appellant. Appellant presented no evidence at the hearing that there was a breakdown of the attorney-client relationship and relied solely on the allegations in his motion.

{¶73} Accordingly, appellant's fourth assignment of error is without merit and is overruled.

{¶74} For the reasons stated above, appellant's conviction is hereby affirmed. Appellant's sentence is hereby reversed and vacated and this matter is remanded for resentencing before a new trial court judge.

Waite, P. J., concurs.

D'Apolito, J., concurs.

Case No. 18 BE 0019

———————————

For the reasons stated in the Opinion rendered herein, appellant's first assignment of error has merit and is sustained. Appellant's second, third, and fourth assignments of error lack merit and are overruled. It is the final judgment and order of this Court that appellant's conviction in the Court of Common Pleas of Belmont County, Ohio, is hereby affirmed. Appellant's sentence is hereby reversed and vacated and this matter is remanded for resentencing before a new trial court judge. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**