[Cite as *State v. Smith*, 2021-Ohio-2866.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA33 |
| | : | |
| vs. | : | |
| | : | |
| SEAN EARL SMITH, | : | <u>DECISION AND JUDGMENT</u> |
| AKA: SALAH BEY | : | <u>ENTRY</u> |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

James A. Anzelmo, Gahanna, Ohio, for Appellant.

Judy Wolford, Pickaway County Prosecutor, Circleville, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Sean Earl Smith, a.k.a. Salah Bey, hereinafter "Appellant,"
appeals the "Entry of Jury Verdict of Guilty, Entry of Sentence, and
Advisement of Discretionary Post Release Control" filed September 25,
2019, in the Pickaway County Court of Common Pleas. Appellant raises six
assignments of error. Upon review of the record and analysis of the
pertinent Ohio law, we find no merit to Appellant's assignments of error.
Accordingly, we affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} On February 1, 2019, Appellant was indicted on three counts: (1) Having Weapons While Under Disability with Specification, R.C. 2923.13(A)(2), a felony of the third degree; (2) Possession of Drugs with Specification, R.C. 2925.11(A)/(C)(2)(a), a misdemeanor of the first degree; and (3) Possession of Marijuana with Specification, R.C. 2925.11(A)/(C)(3)(b), a misdemeanor of the fourth degree.  Appellant's charged offenses arose from a traffic stop which occurred in Pickaway County on January 6, 2018.  Appellant was stopped by Trooper Kevin Large of the Ohio State Highway Patrol.

{¶3} On March 13, 2019, Appellant was arraigned and entered pleas of not guilty.  He was initially represented by retained counsel, but later completed the necessary forms and was found indigent.  The court appointed Attorney Lori Rankin as Appellant's counsel.

{¶4} On May 29, 2019, the matter came on for a motion hearing.  The hearing began with Appellant being uncooperative, refusing to acknowledge his legal name, and interrupting the judge.  Attorney Rankin explained the hearing had been scheduled at her request.  Attorney Rankin explained that Appellant disagreed with her analysis of his case and how the matter should

proceed. Appellant's uncooperative conduct continued throughout the hearing.

{¶5} Based upon Appellant's conduct, the trial court ordered a competency evaluation. Appellant continued to interrupt, contending that the trial court had no jurisdiction over him. As the hearing ended, Appellant was removed from the courtroom. On that same date, Appellant filed several irregular documents, the first captioned as "Revocation of Power of Attorney Fiduciary Termination Notice."

{¶6} Appellant's competency hearing took place on July 24, 2019. The trial court announced, having received a competency report, that Appellant functioned well and was capable of assisting his counsel in his own defense. Appellant was found competent to stand trial. Appellant addressed the court and the attorneys, again arguing that he had filed an affidavit challenging the court's jurisdiction and arguing that he had been "misclassified, misidentified" by the courts. The trial court made a finding that it did have jurisdiction over Appellant and his case. Appellant was again removed from the courtroom, arguing as he was taken away that his rights were being violated and there was no jurisdiction over him or the case.

{¶7} On August 22, 2019, another hearing took place to determine whether Appellant was capable of representing himself at trial. Appellant

immediately began objecting about his constitutional rights, objecting to being called "Mr. Smith," stating that he did not consent to the proceedings, and demanding his release. The trial court scheduled the matter for trial and ordered Attorney Rankin to remain as counsel. Appellant refused to sign the trial notice.

{¶8} Appellant's trial commenced on September 19, 2019. The proceeding began in the jury room but outside of the presence of the prospective jurors. The trial court wished to have the plea discussions disclosed but Appellant continually interrupted. Appellant stated his refusal to participate in the jury trial. He purported to terminate Attorney Rankin. Appellant was speaking so fast he was cautioned to slow down so that the court reporter could catch his statements. After several fruitless attempts to allow Appellant to conform his conduct appropriately, the court ordered that Appellant be taken to the county jail to watch the proceedings. Appellant returned to the courtroom for his own testimony in the defense case and remained in the courtroom for the rest of the trial.

{¶9} Appellant was convicted of all counts and sentenced to a 36-month prison term on Count One. The trial court imposed jail sentences on Counts Two and Three which were to be served concurrently to Count One.

{¶10} This timely appeal followed.  Additional facts will be set forth, where pertinent.

ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT ERRED IN FINDING THAT SMITH WAS COMPETENT TO STAND TRIAL, IN VIOLATION OF THIS DUE PROCESS RIGHTS [SIC] UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

II.     THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING SMITH'S MOTION TO DISMISS HIS TRIAL COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION.

III.    WHEN THE TRIAL COURT REMOVED SMITH FROM THE COURTROOM DURING HIS TRIAL, THE COURT FAILED TO SAFEGUARD SMITH'S CONSTITUTIONAL RIGHTS UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION.

IV.     SMITH RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION.

V.      THE TRIAL COURT ERRED BY DENYING SMITH'S MOTION FOR ACQUITTAL, PURSUANT TO CRIM. R. 29, WHICH WAS MADE AT THE CLOSE OF THE PROSECUTION'S CASE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED

STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION.

VI.     SMITH'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION.

VII.    THE TRIAL COURT ERRED WHEN IT SENTENCED SMITH, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION.

ASSIGNMENT OF ERROR ONE - COMPETENCY

{¶11} Appellant asserts that this court must reverse his conviction because he was not competent to stand trial.  Appellant argues that throughout the proceedings he made incoherent, rambling and nonsensical statements, as well as demonstrating paranoia regarding his own counsel and the trial court.  While Appellant concedes that a psychiatrist found him competent to stand trial, his bizarre conduct persisted throughout the trial.  Appellant concludes that the record establishes by a preponderance of the evidence that he was not competent to stand trial.

{¶12} In response, the State of Ohio points out that the trial court followed the requirements of RC. 2945.37 in ordering a competency

evaluation.  The forensic psychologist's report contained findings that Appellant was capable of understanding the nature of the legal proceedings against him and was capable of assisting his counsel in his own defense. Therefore, the State argues that the trial court did not err when it found Appellant competent to stand trial.

## STANDARD OF REVIEW

{¶13} A trial court's decision on competency will not be disturbed absent an abuse of discretion.  *See State v. Lechner*, 4th Dist. Highland No. 19CA3, 2019-Ohio-4071, at ¶ 24; *State v. Clark,* 71 Ohio St.3d 466, 469, 1994-Ohio-43, 644 N.E.2d 331.  An "abuse of discretion" requires more than an error of judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable.  *Id*. at 470.  "Thus, an appellate court will not disturb the trial court's competency determination if the record contains 'some reliable, credible evidence supporting the trial court's conclusion that appellant understood the nature and objective of the proceedings against him.' "  *Lechner, supra,* quoting *State v. Williams*, 23 Ohio St.3d 16, 19, 490 N.E.2d 906 (1986); *State v. Stewart,* 4th Dist. Gallia No. 91CA24, 1992 WL 174699, *3 (July 22, 1992).

LEGAL ANALYSIS

{¶14} Due process requires a criminal defendant be competent to stand trial. *See Lechner, supra,* at ¶ 25; *State v. Berry,* 72 Ohio St.3d 354, 359, 1995-Ohio-310, 650 N.E.2d 433. "It has long been accepted that a person who lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 95 S. Ct. 896, 420 U.S. 162, 171 (1975). Thus, "[c]onviction of an accused while he or she is legally incompetent is a violation of due process." *State v. Merryman,* 4th Dist. Athens No. 12CA28, 2013-Ohio-4810, ¶ 14.

{¶15} "The United States Supreme Court established the test for competency and requires the court to determine if an accused 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " *Lechner, supra,* at ¶ 26, quoting *Dusky v. United States,* 80 S.Ct. 788, 789, 362 U.S. 402 (1960). Ohio has codified the competency test in R.C. 2945.37(G) as follows:

> A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's

defense, the court shall find the defendant incompetent to
stand trial and shall enter an order authorized by section
2945.38 of the Revised Code.

{¶16} Under the above subjective test, if a defendant is capable of

understanding the nature and objective of the proceedings and assisting in

the defense, then the defendant is competent to stand trial.  A defendant with

mental illness or intellectual deficiencies may still be competent to stand

trial.  *See Lechner,* at ¶ 27.  " 'Incompetency must not be equated with mere

mental or emotional instability or even with outright insanity.  A defendant

may be emotionally disturbed or even psychotic and still be capable of

understanding the charges against him and of assisting his counsel.' "

*Lechner, supra,* quoting *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d

1016 (1986).

{¶17} In Appellant's case, the record reflects that a possible

competency issue first manifested itself at a motion hearing requested by his

counsel on May 29, 2019.  The hearing on that date began with Appellant

refusing to be seated and interrupting the trial court and his own attorney.

Appellant stated that he "filed a motion to preserve his rights."  Appellant

repeatedly refused to consent to the name "Sean Smith"; insisted that he was

"not a corporate fiction"; insisted he was a "duly indigenous person of the

land"; objected to the jurisdiction of the court; and insisted that his court-appointed attorney did not speak for him.

{¶18} Ms. Rankin advised the court that she had researched the law and, applying the facts to Appellant's case, considered filing a motion to suppress to be a futile act. She further advised that she had explained her legal analysis of the case to Appellant by letter and that he had contacted her to express his disagreement and his wish to terminate her legal services. As Attorney Rankin attempted to explain the status of the case, Appellant repeatedly interrupted her, stating he felt Attorney Rankin was "not working in my best interest."

{¶19} The trial court thereafter ordered a competency evaluation. Appellant again objected. As Appellant was removed from the courtroom, he repeatedly objected to the court's jurisdiction and right to order the evaluation. The court's "Entry Ordering Examination on Competency" was filed June 3, 2019.

{¶20} On July 24, 2019, the record indicates the trial court conducted a brief hearing regarding the competency issue. The trial court referenced a report it had received, prepared by Kevin J. Edwards, Ph.D. of Netcare Forensic Center. The trial court noted that Dr. Edwards opined that Appellant "functions quite well and is capable of assisting counsel in his

own defense." Attorney Rankin, on behalf of Appellant, stipulated to the findings of the report. She began to explain that Appellant had filed other motions and she anticipated he would again ask for her dismissal.

{¶21} At this point Appellant began a long diatribe, again challenging the trial court's jurisdiction and demanding dismissal of the case. He argued that he had been "misclassified, misidentified by the courts." Appellant affirmed his "true aboriginal status in the state and rightfully reclaim my social and cultural life for the state. For I do not allow the courts to subject my living breathing person to be of a (inaudible) man or a third party and take up the identity of a corporate identity." The trial court interrupted, "All right. I've heard enough. I'm making, on the record, a determination I do have jurisdiction of this case, and over you and this charge." The trial court further found Appellant was competent to stand trial. While the trial court was attempting to set the matter for trial, Appellant continued to object to the jurisdiction and to his "corporate name" of "Sean Smith."

{¶22} Based upon our review of the record and these proceedings, we find the trial court did not err in finding Appellant competent to stand trial. Despite Appellant's multiple and repeated objections and outbursts, what is available for this Court's review indicates the trial court handled Appellant's

competency determination properly and in accordance with the controlling statutes.

{¶23 To begin, when the issue of Appellant's competency was raised, the trial court ordered a competency evaluation in accordance with R.C. 2945.371. The report prepared by Dr. Edwards, a forensic psychologist, contained a detailed step-by-step explanation of his evaluation of Appellant. His report demonstrates that he explained the nature and purpose of the evaluation to Appellant, and the fact that under the circumstances, a confidential doctor-patient relationship did not exist. Dr. Edwards' report listed the sources of information he received through documents and directly from Appellant's self-reporting. The report explained the data and findings upon which Dr. Edwards' opinion was based. The report discussed Appellant's current mental condition; the issue of any mental illness; the issue of any cognitive deficits; Appellant's current capacity to understand the nature of the proceedings and charges against him; and Appellant's current capacity to assist in his own defense. Dr. Edwards opined as follows: (1) Appellant's current mental condition was not marked with significant mental impairment; (2) Appellant did not have current symptoms meeting full criteria for mental illness; (3) Appellant did not meet the criteria for intellectual disability; (4) Appellant was able to understand the nature

and objective of the proceedings against him; and (5) Appellant was capable of assisting in his own defense. Dr. Edwards specifically opined that appellant was "able to conform his behavior to the dictates of the courtroom setting."

{¶24 Finally, the trial court held a competency hearing in accordance with R.C. 2945.37. Appellant's counsel stipulated to the report. And notably, as set forth above, while Appellant repeatedly interrupted and asserted the above-described objections, he never objected to the court's finding or his counsel's stipulation as to the competency report. Once the trial court found Appellant was competent to stand trial, the matter proceeded to trial in accordance with R.C. 2945.38.

{¶25 As such, we conclude the trial court's finding of competency was made after ordering a competency evaluation and holding a hearing on the matter. The finding was based on the detailed evaluation and report prepared by a forensic psychologist. The report was stipulated by Appellant's counsel, without objection from Appellant, and made part of the record. Based upon our review, it appears the record contains reliable and credible evidence to support the trial court's decision that Appellant was competent to stand trial. Thus, we cannot find the trial court abused its

discretion in determining Appellant was competent to stand trial.

Accordingly, we overrule Appellant's first assignment of error.

ASSIGNMENT OF ERROR TWO - MOTION TO DISMISS
DEFENSE COUNSEL

{¶26} Appellant next asserts the trial court did not use the

correct standard in evaluating his motion to dismiss his court-appointed

attorney and improperly denied this repeated oral and written request.

Appellant argues that the record of these proceedings establishes a complete

breakdown in communication and cooperation so severe that Appellant did

not trust his counsel.  In response, the State of Ohio contends that while the

relationship between Appellant and his counsel was contentious, it did not

rise to the level required by the Supreme Court of Ohio in *State v. Hennes,*

79 Ohio St. 3d 53, 1997-Ohio-405, 679 N.E.2d 686.  " 'To discharge a

court-appointed attorney, the defendant must show a breakdown in the

attorney-client relationship of such magnitude as to jeopardize the

defendant's right to effective assistance of counsel.' "  *Henness, supra,* 79

Ohio St. 3d 53, 65-66, quoting *State v. Coleman,* 37 Ohio St.3d 286, 525

N.E.2d 792 (1988), paragraph four of the syllabus.  While the issue was

brought before the court on several occasions, at no time did Appellant

present good cause for the court to allow his attorney to withdraw.

## STANDARD OF REVIEW

{¶27} " 'A trial court's decision regarding a request for substitute counsel is governed by an abuse of discretion standard.' " *State v. Kessinger,* 4th Dist. Highland No. 13CA25, 2014-Ohio-2496, at ¶ 54, quoting *State v. Carter,* 4th Dist. Ross No. 0CA3169, 2010-Ohio-6316, ¶ 44. (Internal citations omitted.)  The abuse of discretion standard of review is set forth fully above at ¶ 26.

## LEGAL ANALYSIS

{¶28} " 'An indigent defendant * * * has the right to professionally competent, effective representation.' " *State v. Hoover,* 7th Dist. Belmont No. 18BE0019, 2019-Ohio-4229, at ¶ 67, quoting *State v. Evans,* 153 Ohio App.3d 226, 2003-Ohio-3475, 792 N.E.2d 757, ¶ 30 (7th Dist.), citing *State v. Murphy,* 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001).  However, an indigent defendant is entitled to the appointment of substitute counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result.  *See Hoover, supra.  See also State v. Bomar*, 4th Dist. Scioto No. 00CA2703, 2000-Ohio-1974, at *7; *State v. Blankenship*, 102 Ohio App.3d 534, 558, 657 N.E.2d 559, 574 (12th Dist. 1995) (Internal citations omitted.).

{¶29} " 'The defendant bears the burden of announcing the grounds for a motion for appointment of new counsel. If the defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record.' " *Kessinger, supra,* at ¶ 55, quoting *State v. Smith,* 4th Dist. Lawrence No. 98CA12, 1999 WL 4907, * (Dec. 29, 1998), citing *State v. Deal,* 17 Ohio St. 2d 17, 20, 44 N.E.2d 752 (1969). "Although the inquiry may be brief and minimal, the inquiry must be made." *Id.* However, " 'Even that limited judicial duty arises only if the allegations are sufficiently detailed and specific. Vague or general objections do not trigger the duty to investigate further.' " *Bomar, supra,* quoting *State v. Carter,* 128 Ohio App.3d 419, 423, 715 N.E.2d 223, 225 (4th Dist. 1998).

{¶30} The record here is full of indicators of Appellant's displeasure with Attorney Rankin. The first indication appears in the transcript of the May 29, 2019 hearing. During one outburst, Appellant stated that, "I had filed that to relieve her, that she is not working, she is not working in my best interest, she works for the court, * * *. I object to all of this." Appellant also repeatedly stated, "she does not speak for me." At the July 24, 2019 competency hearing, Attorney Rankin indicated she believed Appellant would be asking to dismiss her. Interestingly, during his lengthy

diatribe regarding his name and the court's jurisdiction on that date, Appellant did not make that request.

{¶31} Appellant, however, had filed on May 29, 2019, a document captioned, in part, "REVOCATION OF POWER OF ATTORNEY FIDUCIARY TERMINATION NOTICE." The trial court held a hearing on August 22, 2019, to determine the status of the relationship between Appellant and his court-appointed counsel. When the court attempted to question Appellant about his apparent request for dismissal of counsel, Appellant was repeatedly interruptive and non-responsive.

{¶32} The trial court interrupted, attempting to find out Appellant's problem with Attorney Rankin. Appellant replied that his affidavit "speaks for itself." Appellant continued to protest the proceedings, his name, and the charges. The trial court eventually ordered that Attorney Rankin remain on the case. Appellant continued to interrupt, refused to sign the hearing notice, and was returned to jail. When Appellant testified at trial, he told the jury he tried to terminate his attorney "maybe four times."

{¶33} The trial court rendered a decision on Appellant's request on August 22, 2019. In the court's decision and entry, the trial court noted that it had attempted to determine whether Appellant had the capability of representing himself, but due to Appellant's refusal to cooperate, the court

was unable to make that determination.  The court found that, consequently, Attorney Rankin would continue to represent Appellant.

{¶34} Based on our review of the record, we find the trial court did not abuse its discretion in denying Appellant's request to discharge his court-appointed attorney.  While there existed an obvious "breakdown of communication" between Appellant and his appointed counsel, the breakdown appears to be solely of Appellant's own making by his refusal to cooperate with the proceedings.  At no time, though given multiple opportunities, did Appellant verbalize legitimate, concerning allegations regarding Attorney Rankin's professional competence.  He made only vague statements that she "worked for the court" or did not "work in his best interest," but he failed to articulate specific facts or reasons.  *See, e.g., State v. Baker,* 4th Dist. Athens No. 13CA18, 2014-Ohio-1967, at ¶ 21.  In addition, Attorney Rankin never requested permission to withdraw.

{¶35} In general, an indigent defendant does not have a constitutional right to choose the attorney who will represent the defendant at state expense.  *See Baker, supra,* at ¶ 19; *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 64.  "The right to counsel must be balanced against the court's authority to control its docket, as well as its awareness that a 'demand for counsel may be utilized as a way to delay the proceedings

or trifle with the court.' " *Hoover, supra,* at ¶ 68, quoting *United States v. Krzyske,* 836 F.2d 1013, 1017 (C.A.6 1988). The right to competent counsel does not mean that defendants must share a "meaningful relationship" with that attorney. *Bomar, supra,* at ¶ 7. *See Morris v. Slappy,* 461 U.S. 1, 13, 103 S.Ct. 1610, 1617 (1983); *also see State v. Glassure,* 132 Ohio App.3d 227, 239, 724 N.E.2d 1165, 1174 (7th Dist.1999).

{¶36} In this case, we find Appellant's actions may indeed have been motivated by possibly wishing to delay his trial. Appellant's repeated disruptions which necessitated the competency evaluation did in fact delay the trial. When given the opportunity to voice legitimate concerns about conflict or breakdown in communication, Appellant did not carry his burden to demonstrate any legitimate grounds for dismissal of his attorney.

{¶37} While the relationship between Appellant and Attorney Rankin was obviously difficult, it was made so by Appellant's voluntary actions. There is simply not even a hint that Appellant was denied competent professional legal counsel. The trial court did not abuse its discretion in denying Appellant's request to remove his attorney. As such, we find no merit to Appellant's second assignment of error. Accordingly, it is hereby overruled.

## ASSIGNMENT OF ERROR THREE - REMOVAL
## FROM COURTROOM

{¶38} The trial court ordered Appellant removed from the courtroom due to repeated verbal interruptions.[1] While Appellant was able to hear the proceedings, the court did not provide a means for Appellant to see the proceedings via contemporaneous video. Consequently, Appellant contends that he had no opportunity to observe the State's sole witness, Trooper Large, and to observe the proceedings, thereby hampering his ability to defend himself at trial. Appellant concludes that the trial court failed to safeguard his constitutional rights under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. Due to this violation, Appellant concludes that his conviction must be reversed.

## STANDARD OF REVIEW

{¶39} Article I, Section 10 of the Ohio Constitution states, " '[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel.' " *State v. Blanton*, 2018-Ohio-1278, 110 N.E.3d 1, ¶ 100 (4th Dist.), quoting *State v. Lawwill,* 8th Dist. Cuyahoga No. 88251, 2007-Ohio-2627, at ¶ 60. " 'A criminal defendant has a federal and state

---

[1]The content of these interruptions was discussed at length in our resolution of the first assignment of error. Appellant repeatedly refused to answer direct questions and argued the trial court did not have jurisdiction over him or the criminal case. Appellant refused to acknowledge his legal name of "Sean Smith." Appellant repeatedly attempted to terminate his court-appointed counsel.

fundamental due process right to be present at all critical stages of his trial,
absent a waiver of rights or other extraordinary circumstances.' " *Blanton,*
*supra,* quoting *State v. Drummond,* 7th Dist. Mahoning No. 05-MA-197,
2006-Ohio-7078 (Internal citations omitted.) *See also* Crim.R. 43(A).
" 'Crim.R. 43 provides a criminal defendant the right to be present at every
stage of the criminal proceedings and any modification of a sentence.' "
*State v. Smith*, 4th Dist. Scioto No. 14CA3657, 2015-Ohio-841, ¶ 12,
quoting *State v. Patrick,* 4th Dist. Lawrence No. 12CA16, 2013-Ohio-3821,
¶ 10; citing Crim.R. 43(A)(1); *compare State v. Glasser,* 4th Dist. Athens
No. 11CA11, 2012-Ohio-3265, ¶ 49; citing *State v. Davis,* 116 Ohio St.3d
404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 90.

{¶40} A defendant's presence is required at trial unless he waives his
right or extraordinary circumstances exist requiring exclusion, such as his
misconduct. *See State v. Dumas*, 7th Dist. Mahoning No. 12MA31, 2015-
Ohio-2683, at ¶ 19; *State v. Brown,* Fifth Dist. No.2003-CA-01, 2004-Ohio-
3368, citing *State v. Williams,* 6 Ohio St.3d 281, 286, 452 N.E.2d 1323
(1983). "Where a defendant's conduct in the courtroom is so disruptive that
the hearing or trial cannot reasonably be conducted with the defendant's
continued physical presence, the hearing or trial may proceed in the
defendant's absence or by remote contemporaneous video." Crim.R. 43(B).

To find that a defendant's right to confrontation was violated, we must find that the trial court abused its discretion in removing the defendant. *See Dumas, supra,* citing, *Illinois v. Allen*, 90 S. Ct. 1057, 397 U.S. 337 at 343; *see also, State v. Chambers,* 10th Dist. No. 99AP-1308, 2000 WL 963890 (July 13, 2000). The exclusion of a defendant should be considered in light of the whole record. *United States v. Gagnon,* 105 S. Ct. 1482, 470 U.S. 522, 526 (1985). The abuse of discretion standard of review has been set forth fully above.

## LEGAL ANALYSIS

{¶41} On the morning of trial, Appellant began with the above-referenced verbal disruptions. The trial court informed the parties that the jury trial would proceed. Appellant then announced he would not participate. The trial court advised that Appellant would participate or he would go back to jail and watch the trial from jail. Appellant persisted. The trial court then ordered Appellant be taken to the jail.

After Appellant was removed from the courtroom, the trial court stated:

> In light of what's happening this morning, the court is going to take the procedure of attempting to bring Mr. Smith back to the courthouse and have him located on the same floor at the courthouse, much like we do with minors testifying in sexual abuse cases. We will have a laptop computer set up so that he can see and observe the

proceedings and be in communication with Ms. Rankin, with also an understanding and an instruction that if he elects to cooperate and conduct himself in an orderly fashion, then the court would allow him obviously to come back into the courtroom to be present during proceedings.

{¶43} The record reflects the trial court again addressed Appellant:

The record should reflect this proceeding is taking place in the magistrate's courtroom outside the presence of the prospective jurors who are still in the courtroom. * * * Mr. Smith is in the courtroom again with Ms. Rankin, the State is represented by Ms. Wolford. Mr. Smith, on the record I want you to understand that you will, because of your behavior, you will remain here on this floor of the courtroom with the jailers in a room adjacent to the courtroom, and your attorney, Ms. Rankin, will be in the courtroom on your behalf, Ms. Rankin. We will proceed to select the jury. We will try the case to the jury. In the event that you decide to adjust your behavior and not interrupt and not be disruptive to the proceedings, then, in that case, I will allow you to be brought to the courtroom so that you can be present in the courtroom.

{¶44} To this, Appellant engaged in a lengthy diatribe, "So I ask you sir, who are you referring to as Sean Smith" and repeating that the court did not have jurisdiction. The trial court inquired twice more whether Appellant would be willing to behave in an orderly manner and remain in the courtroom. Appellant continued to interrupt. The trial court stated: "All right. He will be removed to the adjoining room and we'll proceed." Appellant thereafter interposed: "I object. I have a right to be around my peers."

{¶45} After Appellant's removal, the trial court went back on the record, stating as follows:

> The record should reflect that I have been advised by counsel for the state and counsel for the defendant that Mr. Smith has been provided with a cell phone in the room adjoining the courtroom so that he can have the ability to listen to the proceedings, as well as communicate with counsel if necessary. So counsel has a cell phone at her table as well.

{¶46} When the parties began to select a jury, the trial court instructed the jurors as follows:

> Mr. Smith currently is not in the courtroom. He is however in an adjoining room to the courtroom where he does have access to the proceedings by way of telecommunication with his attorney. * * * Because of the conduct of Mr. Smith, the court has elected to proceed without his presence in the courtroom. In the event that changes, he may be here. In the event it doesn't change, he will not be here, but we are proceeding with this trial. * * * You will give no consideration to the fact he is not here, has no bearing on the evidence to be presented in the case or the outcome of the case. So I ask you not to put any emphasis on that fact at all.

{¶47} Appellant testified in his own defense and remained in the courtroom through closing argument and jury instructions. At the close of trial, the trial court did not repeat the above instruction to the jury.

{¶48} Our research has yielded various cases where defendants were removed from the courtroom during hearings, sentencings, or the evidentiary

phases of trials.  In most cases, Appellants were provided with a means of viewing and hearing the trial.  In *Lawwill, supra*, the defendant was removed during a hearing where his counsel was present but Lawwill could not see or observe the hearing.  The *Lawwill* court noted the Supreme Court of Ohio found that where the following three factors were satisfied, any error as a result of defendant's absence is harmless:

> First, where the court found that the defendant's interests were more than adequately protected by his attorney who was present. * * * Second, the court found that his presence would have contributed little. * * * Third, the court found that his failure to timely object constituted waiver of the argument * * *. *State v. Drummond, supra,* citing *State v. Williams,* 6 Ohio St.3d 281, 452 N.E.2d 1323 (1983).[2]

{¶49} In *Dumas, supra,* Appellant was excluded from the courtroom during the evidentiary phase of his trial for repeated acts of misconduct and continuous disruptions in the courtroom.  The jury was properly instructed to disregard his absence.  Once he was removed, Dumas was still able to watch the proceedings via video with audio and was still able to communicate with his counsel.  The 7th District found there was no violation of Dumas's Sixth Amendment right to be present for his trial, despite the fact that Dumas

---

[2]In *Lawwill,* the 8th District found:  "Lawwill's counsel was present during the hearing along with prosecution.  The entire hearing was conducted on the record.  A review of the record demonstrates that Lawwill's interests were more than adequately protected.  A review of the transcript also reveals that Lawwill's presence would have made little contribution to the hearing at issue.  Further, Lawwill failed to timely object, thus constituting waiver of the argument."

made an apology and request to return. Nevertheless, the 7th District found the trial court was well within its discretion to evaluate Dumas's sincerity and willingness to conduct himself properly.

{¶50} The circumstances of Appellant's case are somewhat more similar to those in *State v. France,* 5th Dist. Richland No. 2011-CA-68, 2012-Ohio-1003, wherein the defendant asserted on appeal that his rights were violated because he was not able to contemporaneously view the proceedings in the courtroom and communicate with his trial counsel. France was not present during cross-examination of one of the victims in his case and could not assist his attorney in following up to any answers he provided on cross-examination. The appellate court disagreed. The appellate court observed that France had ample warning of the consequences of his disruptive behavior and was repeatedly warned that the trial would go forward without him unless he promised to behave. The appellate court found Appellant voluntarily, by his conduct, waived his right to be present and therefore it followed that there was no constitutional violation for the court's failure to provide France the opportunity to observe the proceedings via closed-circuit television or other electronic media. Furthermore, France's actions also demonstrated that he voluntarily chose not to communicate with his attorney.

{¶51} In this case, Appellant was excluded from most of the trial court proceedings, and most importantly, the evidentiary phase. Although the court in good faith attempted to set up a way for Appellant to view the trial, he was only able to hear the trial and communicate with his counsel by cell phone. The trial court appropriately instructed the jurors regarding Appellant's absence.

{¶52} The trial court gave Appellant several chances to control his outbursts and diatribes. Appellant chose not to do so. Appellant was represented in the court by competent counsel, so his interests were adequately protected. Given that Appellant refused to answer direct questions and continually interrupted others, his presence during the evidentiary phase would have contributed little. Perhaps this is why Appellant's counsel did not object to the removal.

{¶53} While Appellant did object to the removal, on appeal he does not argue specifically how his absence hampered his ability to defend. He could hear the trooper's testimony. Appellant does not explain what he was prevented from doing, asking, etc., which would have contributed favorably to his defense strategy. Under these circumstances, we find no violation of Appellant's constitutional rights and no abuse of the court's discretion in

excluding Appellant from the courtroom based on his uncooperative conduct. Accordingly, we overrule the third assignment of error.

## ASSIGNMENT OF ERROR FOUR - INEFFECTIVE ASSISTANCE

{¶54} Appellant asserts he was rendered the ineffective assistance of counsel because his counsel: (1) failed to object to the trooper's testimony about the operability of the gun found in Appellant's car; (2) failed to move for the exclusion of the trooper's testimony on the grounds that the prosecution failed to provide a written report on the trooper's opinion; (3) failed to object to the trooper's testimony about the lab report on the drugs found in Appellant's car; and (4) failed to move for a waiver of fine. For the reasons which follow, we disagree with Appellant's assertions.

## STANDARD OF REVIEW

{¶55} "To demonstrate ineffective assistance of counsel, a defendant 'must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different.' " *State v. Holdren,* 4th Dist. Pickaway No. 20CA3, 2021-Ohio-810, at ¶ 32, quoting *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113, citing *Strickland v. Washington*, 104 S. Ct. 2052, 466 U.S. 668, 687-688, 694 (1984). Failure to

demonstrate either prong of this test "is fatal to the claim." *See State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14, citing *Strickland*, 104 S. Ct. 2052, 466 U.S. 668.

{¶56} "A defendant 'has the burden of proof because in Ohio, a properly licensed attorney is presumed competent.' " *Holdren, supra*, at ¶ 33, quoting *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62, citing *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999), citing *Vaughn v. Maxwell,* 2 Ohio St.2d 299, 209 N.E.2d 164 (1965). "In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance." *Id*., citing *State v. Davis,* 133 Ohio App.3d 511, 728 N.E.2d 1111 (8th Dist.1999). To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

## LEGAL ANALYSIS

1. <u>Defense counsel's failure to object to "operability" testimony from Trooper Large and for exclusion of the trooper's testimony based on a discovery violation.</u>

{¶57} Appellant was convicted of R.C. 2923.13(A)(2), Having Weapons While Under Disability with Specification.  Under R.C. 2923.13(A)(2), a person who has been convicted of a felony of violence is prohibited from possessing a firearm.  R.C. 2923.11(B) defines "firearm" as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant":

> (B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
> (2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

{¶58} " '[T]he state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense.' " *State v. Allah,* 4th Dist. Gallia No. 14CA12, 2015-Ohio-5060, at ¶ 10, quoting *State v. Gaines,* 46 Ohio St.3d 65, 68-69, 545 N.E.2d 68 (1989).  Subsection (B)(2) of the statute expressly allows the trier of fact to rely upon circumstantial evidence to determine if the firearm was

operable. *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678

N.E.2d 541 (1997), paragraph one of the syllabus. " 'Empirical analysis of

the gun is not required to prove operability.' " *Allah, supra,* quoting *State v.*

*Murphy*, 49 Ohio St.3d 206, 209, 551 N.E.2d 932 (1990).

{¶59} In *Allah,* the state offered the firearms into evidence. Troopers

testified that one of the firearms was a loaded 9mm handgun found on the

driver's side floorboard and the other firearm was a .38 revolver in a suitcase

with ammunition. The *Allah* jury had the actual weapons and could

logically infer from the loading of one gun and the provision of ammunition

for the other that both were capable of firing that ammunition. Neither

testimony of test-firing nor operability reports are required to prove

operability. In *Allah,* this court found that under the pertinent case law

developed, there was sufficient evidence of operability to sustain Allah's

conviction for having a weapon under disability.

{¶60} The *Allah* court discussed several other cases including *State v.*

*Dickerson,* 11th Dist. Ashtabula App. No.2013-A0046, 2015-Ohio-938,

which held that "evidence that a gun was loaded combined with the

submission of that gun into evidence is sufficient to prove operability." *Id*.

at ¶ 36, citing *State v. Messer,* 107 Ohio App.3d 51, 55, 667 N.E.2d 1022

(9th Dist.1995), appeal not allowed 75 Ohio St.3d 1422, 662 N.E.2d 25

(1996). In *Messer, supra,* the court held that where the state produced testimony of a veteran police officer who stated that the gun "appeared operable" and was found hidden and loaded under a mattress, and the gun was admitted into evidence, there was sufficient evidence to prove operability. *Messer* at ¶ 55. In *State v. Miller*, 12th Dist. Preble App. No. CA2002-02-004, 2002-Ohio-6109, ¶ 13-14, the court concluded that evidence of test-firing was not required because, "the firearms themselves were admitted into evidence, along with testimony that the pistol was loaded and ammunition for both firearms was found nearby. Even without testimony regarding firing of the weapons, these facts alone could be sufficient to establish operability.").[3]

{¶61} Our decision in *Allah* was cited more recently in *State v. Pope*, 1st Dist. Hamilton No. C-180587, 2019-Ohio-3599. In *Pope,* there was no evidence that the weapon was test-fired, nor was there specific evidence about the operability. The gun itself was not offered into evidence, only a photograph of it. Nevertheless, the appellate court concluded the operability of a firearm may be established by circumstantial evidence, including

---

[3] *But see Sanders v. McMackin,* 786 F.Supp. 672, 676 (N.D.Ohio 1992), wherein the court vacated the sentence for a firearm specification because state failed to meet burden to prove operability, noting that "If the purchaser had placed bullets in the gun before giving it to Sanders' father, or had the witness testified that he saw bullets in the gun, a rational jury could possibly make the inferential leap to find operability."

evidence that the owner kept the firearm, a fully loaded handgun, in his pants pocket and had a license to carry it concealed.

{¶62} At Appellant's trial, Trooper Large testified that when he conducted a probable cause search of Appellant's vehicle, he discovered a Ruger SR .38 Special. Trooper Large identified State's Exhibit 7, a photograph of the gun. Trooper Large testified that he took the photograph of the gun and that the exhibit was a true and accurate copy of his photograph. The State inquired whether Trooper Large was able to determine if the weapon was in working order. Trooper Large testified:

> Yes. All firearms that we seize, take into evidence, we make sure they operate correctly, which means we test fire them. If they're not operable, if they can be fired, if they can be, but I was able to test fire it, and it functioned properly. It was test fired at our patrol post.

{¶63} Appellant's counsel did not object to this testimony. However, we do not find counsel's performance was deficient based upon the failure to object. As noted above, R.C. 2923.11(B), which defines "firearm," explicitly provides at subsection (B)(2) that circumstantial evidence of operability by an individual exercising control over the firearm is sufficient evidence. Had counsel interposed an objection, it would likely have been overruled. The decision to admit or exclude evidence rests within the trial

court's sound discretion.  *See State v. Inman,* 4th Dist. Ross No. 13CA74,
2014-Ohio-786, at ¶ 20.

{¶64} An attorney's decision as to whether to object at certain times
during trial is presumptively considered a trial tactic or strategy that we will
not disturb.  *See State v. Thacker,* 4th Dist. Lawrence No. 18CA21, 2020-
Ohio-4620, at ¶ 89, *State v. Fisk,* 9th Dist. Summit No. 21196, 2003-Ohio-
3149, ¶ 9; *State v. Phillips,* 74 Ohio St.3d 72, 85, 656 N.E.2d 643, (1995).
"Because 'objections tend to disrupt the flow of a trial, [and] are considered
technical and bothersome by the factfinder * * * competent counsel may
reasonably hesitate to object in the jury's presence.' "  (Citation omitted.)
*State v. Mickens,* 10th Dist. Franklin No. 08AP-626, 2009-Ohio-1973, at
¶ 29, quoting *State v. Campbell,* 69 Ohio St.3d 38, 53, 630 N.E.2d 339
(1994); *State v. Blair,* 2016-Ohio-2872, 63 N.E.3d 798, ¶ 108 (4th Dist.).

{¶65} As to Appellant's contention that his counsel was deficient for
failure to move for exclusion of the trooper's testimony based on the State's
failure to provide a report on the trooper's testimony, we also find no error.
The Supreme Court of Ohio in *State v. Boaston,* 160 Ohio St.3d 46, 2020-
Ohio-1061, 153 N.E.3d 44, observed that the plain language of Crim.R.
16(K) expressly provides the consequence for failing to disclose an expert's
report as required:  "Failure to disclose the written report to opposing

counsel shall preclude the expert's testimony at trial." *Id*. at ¶ 55.  As

indicated above, the pertinent statute does not require an expert's testimony

as to operability, rather, testimony is allowed by "any individual exercising

control over the firearm."  Trooper Large did not prepare an "expert" report.

Trooper Large was not held out as an expert at trial.  Again, any motion or

objection as to Trooper Large's status as an "expert," would have been

denied.  " 'Counsel does not provide ineffective assistance by failing to file

futile motions.' "  *State v. Nichols*, 4th Dist. Adams No. 11CA9, 2012-Ohio-

92, at ¶ 52, quoting *State v. Parra,* 8th Dist. No. 95619, 2011-Ohio-3977, at

¶ 78.

{¶66} Upon review of the record, we find Appellant's counsel's

decisions to be reasonable trial strategies.  We do not find counsel's

performance fell below the objective standard of reasonableness, thus it was

not deficient.  Based on the above, we find no merit to Appellant's

arguments herein.

2. <u>Defense counsel's failure to object to Trooper Large's</u>
<u>testimony concerning the lab report of drugs.</u>

{¶67} "The Sixth Amendment's Confrontation Clause provides, 'In all

criminal prosecutions, the accused shall enjoy the right * * * to be

confronted with the witnesses against him * * *.' "  *State v. Detienne*, 4th

Dist. Athens No. 16CA13, 2017-Ohio-9105, at ¶ 17, quoting *State v.*

*Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 34.  The Confrontation Clause of the Sixth Amendment is made applicable to the states by the Fourteenth Amendment.  *State v. Issa,* 93 Ohio St.3d 49, 752 N.E.2d 904, fn. 4 (2001).  Consequently, this constitutional right applies to both federal and state prosecutions, but the right of confrontation in Article I, Section 10 of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment.  *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 12.

{¶68} " 'The United States Supreme Court has interpreted [the Sixth Amendment right to confrontation] to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.' " *Detienne, supra,* at ¶ 23, quoting *Maxwell* at ¶ 34, citing *Crawford v. Washington,* 124 S. Ct. 1354, 541 U.S. 36, 53-54 (2004).

{¶69} " 'It is a well-established principle that Confrontation Clause rights, like other constitutional rights, can be waived.' " *Detienne, supra,* at ¶ 24, quoting *State v. Pasqualone,* 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 14, citing *Brookhart v. Janis,* 86 S. Ct. 1245, 384 U.S. 1, 4

(1966); *Hawkins v. Hannigan,* 185 F.3d 1146, 1154 (10th Cir.1999). (Internal citations omitted).

{¶70} In Ohio, a defendant can waive his right to cross-examine a laboratory analyst by failing to comply with a notice-and-demand statute. *See Detienne, supra,* at ¶ 25. " '[N]otice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use [a laboratory] analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial.' " *Detienne, supra,* quoting *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 557 U.S. 305, 326 (2009).

{¶71} The most frequently relied upon notice-and-demand statute is found in R.C. 2925.51. *See Detienne, supra,* at ¶ 26. Under R.C. 2925.51(A), in any criminal prosecution for a violation of Chapters 2925 ("Drug Offenses") or 3719 ("Controlled Substances"), a qualifying laboratory report stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, is admissible at trial as prima-facie evidence of the content,

identity, and weight or the existence and number of unit dosages of the substance so long as the prosecuting attorney serves a copy of the report on the accused beforehand.  However, "[t]he report shall not be prima-facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance *if the accused or the accused's attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report*."  R.C. 2925.51(C). (Emphasis added.)

{¶72} "In *Pasqualone,* the Ohio Supreme Court held that 'the procedures of R.C. 2925.51 adequately protect an accused's right to confrontation, so that an accused who fails to demand the testimony of the analyst pursuant to R.C. 2925.51(C) validly waives his opportunity to cross-examine the analyst.' " *Detienne, supra*, at ¶ 27, quoting, *Pasqualone,* 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, at ¶ 44.  In other words, "When the state has complied with its obligations under R.C. 2925.51, a defendant's failure to use the procedures of R.C. 2925.51(C) to demand that a laboratory analyst testify constitutes a waiver of the opportunity to cross-examine the analyst at trial and allows the analyst's report to be admitted as

prima facie evidence of the test results." *Id.*, at paragraph two of the syllabus.

{¶73} Appellant contends that trial counsel was ineffective for failing to object to the lab report conducted on the drugs found in his vehicle. The lab report evidence was presented solely through the testimony of Trooper Large, at times reading from the report. The lab report was provided to Appellant's counsel pursuant to Crim.R. 16, but his counsel failed to demand the testimony of the person who analyzed the drugs.

{¶74} Detienne, who was convicted of operating a motor vehicle under the influence of a controlled substance also contended that his trial counsel was ineffective for failing to demand the chemist's testimony within the statutory time limit. However, this court observed that in *Pasqualone,* the Ohio Supreme Court held that " ' "an accused's attorney is capable of waiving his [or her] client's right to confrontation by not demanding that a laboratory analyst testify pursuant to the opportunity afforded by [the relevant statute], because whether to cross-examine a particular witness is properly viewed as a decision relating to trial tactics or strategy." ' " *Detienne, supra,* at ¶ 37, quoting *State v. McCausland,* 124 Ohio St.3d 8, 2009-Ohio-5933, 918 N.E.2d 507, ¶ 14, quoting *Pasqualone,* 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, at ¶ 44. " '[D]ecisions regarding

cross-examination are within trial counsel's discretion and generally do not form the basis for a claim of ineffective assistance of counsel.' " *Detienne, supra,* quoting *State v. Harris,* 10th Dist. Franklin Nos. 09AP-578, 09AP-579, 2010-Ohio-1688, ¶ 28, citing *State v. Flors*, 38 Ohio App.3d 133, 139, 528 N.E.2d 950 (8th Dist.1987). In *Detienne*, we held that by asserting the affirmative defense of medical authorization [to explain chemical substances found in his system], Detienne was admitting the facts claimed by the prosecution and then relying on independent facts or circumstances that he claimed exempted him from liability. *Id*. at ¶ 38. Thus, we found trial counsel's decision to forgo demanding the chemist's testimony could be viewed as sound trial strategy and could not form the basis of a claim of an ineffective assistance of counsel. *Id*.

{¶75} The State of Ohio has directed us to *State v. Fulk,* 3d Dist. Van Wert No. 2007-Ohio-2695, wherein the Third District was confronted with a similar argument. In resolving the ineffective assistance claim, the appellate court reasoned:

> [W]e find that Fulk's counsel's apparent failure to demand the testimony of the BCI technician prior to trial or otherwise object to the foundation laid for the introduction of the reports at trial could well have been trial strategy. Defense attorneys commonly do not wish to have a chemist present to testify at trial in order to de-emphasize the nature or amount of the drugs in front of the jury. * * *. * * * [W]e will not presume

ineffectiveness or that these strategies were not legitimate solely from a failure to object at trial. Nor can we presume that had defense counsel made a pretrial demand for the testimony of the chemist, the outcome of the trial would have been different. *See Strickland,* 466 U.S. at 688, 694.

{¶76} The same reasoning is equally applicable in this case. Appellant's counsel may well have been attempting to de-emphasize the nature of the drugs found or de-legitimize the testimony of a non-expert. Having a chemist discuss his or her qualifications before testifying about the contents of the lab report certainly would have bolstered the State's case.

{¶77} More importantly, we completely agree that in this case, had counsel made a pretrial demand for the expert's testimony we cannot presume the outcome would have been different. The record is replete with instances and examples of Appellant's refusal to cooperate with his counsel so that the most effective trial strategy could be planned. Then, when Appellant took the stand to testify, instead of answering the direct-examination questions posed by his counsel, he went off on extremely long diatribes raising issues already determined by the trial court and irrelevant to his counsel's attempt to question him.

{¶78} Given the record in this case, we find no merit to Appellant's assertion that his attorney was ineffective for failing to object to the

trooper's testimony about the lab report or failing to demand a chemist's testimony. Counsel's decisions appear to be reasonable trial strategy.

### 3. Waiver of fine

{¶79} Appellant also asserts his counsel was ineffective by failing to move for a waiver of the fine because there is reasonable probability that the trial court would have found him indigent, thereby relieving him of the obligation to pay a fine. R.C. 2947.23 provides for costs to be included in a criminal sentence. In all criminal cases a judge must include in the sentence the costs of prosecution and render a judgment against the defendant for such costs, even if the defendant is indigent. R.C. 2947.23(A)(1)(a). However, a trial court retains jurisdiction to waive, suspend, or modify the payment of the costs "at the time of sentencing or at any time thereafter." R.C. 2947.23(C). A trial court may waive court costs, but it is not required, if a defendant is indigent. *See State v. Hale*, 5th Dist. Perry No. 19CA14, 2020-Ohio-1399, at ¶ 16. (Internal citations omitted.)

{¶80} In *State v. Davis,* 159 Ohio St. 3d 31, 2020-Ohio-309, 146 N.E.3d 560, decided February 4, 2020, the Ohio Supreme Court held that when an indigent defendant makes an ineffective assistance of counsel claim based upon counsel's failure to request a waiver of court costs, a court must objectively consider the facts and circumstances to determine whether the

defendant established the necessary prejudice sufficient to support that claim (i.e., but for counsel's deficient performance, a reasonable probability exists that the result of the proceeding would have been different). *See Hale, supra,* at ¶ 18. The Court also pointed out that a determination of indigency alone does not rise to the level of creating a reasonable probability that the trial court would have waived costs had defense counsel requested the court to do so. For example, if a court finds that a defendant has the ability to work and pay court costs in the future, the court may decide to not waive court costs. *Hale* observed that a court must look at all the circumstances that the defendant sets forth in attempting to demonstrate prejudice and determine whether there is a reasonable probability that the trial court would have granted a motion to waive costs had one been made. *Id*. at ¶ 19. *See Davis, supra,* at ¶ 15.

{¶81} At trial, Trooper Large testified as to the search he conducted after he placed Appellant under arrest:

> Inside his wallet he had money, $300.00 in one hundred dollar bills, and then in his soles of his shoes, in both of them, there was separated a total of $1,017.00 separated between both shoes, both inside the soles of his shoes.

{¶82} In this case, Appellant initially presented to arraignment with a

retained attorney. Appellant later executed the appropriate form and was found to be indigent, thus receiving a court-appointed attorney. When the trial court imposed sentence, the court stated:

> It will be the order of the court that he stand committed for a period of thirty-six months, which is the maximum, pay the court costs, a fine of $1,500.00, execution is hereby awarded to the state for final cost, and the money that was confiscated from the defendant at the time of the arrest.

{¶83} We do not agree that Appellant's counsel was deficient for failing to request waiver of the fine. As indicated above, just because Appellant qualified for appointed counsel does not mean that the trial court would have again found him indigent with no present or future ability to pay fines. At sentencing, Appellant was approximately 46 years old. He was given a 36-month sentence. He was arrested with $1,317.00 in cash on his person. There is no reason to believe that had counsel filed such a motion, that it would have been successful. Appellant has not presented any facts or circumstances, other than his indigency, to support a finding that there was a reasonable probability that the trial court would have granted the request to waive the $1,500.00 fine imposed.

{¶84} We have reviewed the record before us and found nothing that would support the conclusion that there was a reasonable probability that the outcome would have changed had a motion been filed. In fact, when

Appellant filed a Pro Se Motion for Judicial Release in April 2020, he indicated his plan to become "gainfully employed to fulfill my obligations to the court by paying all court fines and court costs assessed" in his case. Nothing in his motion indicated an inability to become employed or pay his fines and costs. We conclude that Appellant has failed to demonstrate a reasonable probability that the outcome would have been different and therefore, Appellant did not suffer prejudice as a result of counsel not filing a motion to waive the fine imposed in his case.

{¶85} Based on the foregoing, we find no merit to Appellant's assignment of error. We do not find Appellant was deprived of the effective assistance of counsel. Accordingly, we overrule the fourth assignment of error.

### ASSIGNMENT OF ERROR FIVE - DENIAL OF MOTION FOR ACQUITTAL PURSUANT TO CRIM.R. 29

{¶86} The hearing transcript reveals at the close of the State's case Appellant's counsel made a Crim.R. 29 motion, without argument, which was denied. The hearing transcript further reveals that prior to Appellant's removal from the courtroom the trial court inquired as to whether there was an issue of identification of the defendant by the arresting officer. The State of Ohio responded: "I don't believe so, Your Honor. The Officer has been able to identify when he walked in today, so he is able to identify for the

record." At this point, Appellant's counsel remained silent. Appellant interjected with one of his previously described disruptions, irrelevant to any issue of identity. On appeal, Appellant contends that because Trooper Large did not provide an in-court identification as to whether Appellant was the individual subject of the traffic stop, the prosecution failed to establish the identity of Appellant in its case in chief.

## STANDARD OF REVIEW

{¶87} Crim.R. 29 provides, in pertinent part, as follows:

> (A) Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

See, e.g., State v. Wycuff, 4th Dist. Pickaway No. 19CA28, 2020-Ohio-5320, at ¶ 18. "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." See State v. Thacker, 4th Dist. Lawrence No. 18CA 21, 2020-Ohio-4620, at ¶ 31; State v. Tenace, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37; State v. Husted, 2014-Ohio-4978, 23 N.E.3d 253, ¶ 10 (4th Dist.).

{¶88} "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making its ruling, a court does not weigh the evidence but simply determines whether the evidence, if believed, is adequate to support a conviction. In other words, the motion does not test the rational persuasiveness of the state's case, but merely its legal adequacy. *See State v. Reyes-Rosales,* 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 15.

{¶89} Additionally, the general rule is that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *See State v. Baxla*, 4th Dist. Highland No. 656, 1988 WL 65644, *3 (June 13, 1988); *State v. Awan,* 22 Ohio St.3d 120, 122 (1986); *State v. Childs*, 14 Ohio St.2d 56, (1968), paragraph three of the syllabus; *State v. Williams,* 51 Ohio St.2d 112, 117 (1977). In this case, because Appellant did not assert

insufficiency of proof of identity as one of the grounds for his Crim.R. 29(A)

motion for judgment of acquittal, he arguably waived the raising of such

error on appeal. *Id.* at *3. *But see State v. Jackson,* 3d Dist. Allen No. 1-13-

83, 2020-Ohio-5224, at ¶ 12:

> Whether a sufficiency of the evidence argument is
> reviewed under a prejudicial error standard or under a
> plain error standard is purely academic. (Internal
> citations omitted.) If there is a failure of proof on any
> element of the offense, the defendant is entitled to a
> judgment of acquittal as a matter of law. *See also State
> v. Brown,* 2d Dist. Montgomery No. 17891, 2000 WL
> 966161 (July 14, 2000), *8.

## LEGAL ANALYSIS

{¶90} Appellant was convicted of Having Weapons While Under

Disability, R.C. 2923.13(A)(2). Appellant asserts there was not sufficient

evidence of the proof of his identity. The State has the burden to prove

every element of the crime charged beyond a reasonable doubt, including the

identity of the person who committed the crime. *See State v. Bailey,* 2d Dist.

Montgomery No. 27177, 2017-Ohio-2679, at ¶ 18; *State v. Tate,* 140 Ohio

St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 15 (Internal citations omitted).

There is no requirement that a witness must make an in-court identification

of a defendant in criminal cases; direct or circumstantial evidence is

sufficient to establish the identity of the accused as the person who

committed the crime. *Cleveland v. Williams,* 8th Dist. Cuyahoga No.

101588, 2015-Ohio-1739, ¶ 25; *State v. Eckard,* 3rd Dist. Marion No. 9-15-45, 2016-Ohio-5174, ¶ 30.

{¶91} In *Baxla, supra,* this court held that witness testimony referring to "the defendant" coupled with a demonstration that the person committing the offense was arrested and charged, and the defendant's appearance at trial in response to the charge, had been found to constitute sufficient evidence of identification to withstand a Crim.R. 29(A) motion.  In *State v. Brown,* 12th Dist. Warren No. 2006-10-120, 2007-Ohio-5787, ¶ 30, the defendant was present at trial and the trooper testified that he had the "opportunity to speak to the defendant."  However, based upon an identification argument, the court in *Bailey, supra,* reversed Bailey's conviction and vacated her sentence.  The *Bailey* court distinguished *Baxla* and similar cases, observing that "Here, there was no such indirect recognition of the defendant in court as the person who committed the assault or even that such person was charged and arrested."  *Id*. at ¶ 23.

{¶92} In this case, Trooper Large testified regarding Appellant's identity as follows:

Q:    And did you make contact with the driver?

A:    Yes I did.

Q:    Now earlier today we talked about the fact that the defendant is

not in the courtroom, but were you able to see the defendant

earlier this morning?

A:     Yes, Ma'am.

Q:     And is the defendant in this particular case the same person

who was driving the vehicle back on January 6, 2018?

A:     Yes, Ma'am.

Q:     Was there anyone else in the vehicle at that time?

A:     No, Ma'am.

Later, the video of the traffic stop was played for the jury.

Q:     Now, Trooper Large, we just watched that video, were going to

call that video State's Exhibit 1.  It has been redacted because

you spent a lot of time searching that vehicle, correct?

A:     That's correct.

Q:     But what was there, is that a true and accurate depiction of what

occurred on January 6, 2018?

A:     Yes, Ma'am.

Later, Trooper Large testified:

Q:     Were you able to determine whether or not the defendant was

under disability for owning a weapon?

A:     Yes, Ma'am.

Q:      And how did you make that determination?

A:      Mr. Smith, first he admitted, he said I have been convicted of a

        burglary.  And then at West Jefferson dispatch we ran a current

        history check on Mr. Smith.  The current history indicated what

        Mr. Smith admitted to.  I verified all the information with his

        date of birth, social security number, the case number, all of

        that was confirmed to be true and accurate.[4]

{¶93} We find that after viewing the evidence in a light more favorable to the prosecution, any rational trier of fact could have found Appellant's identity proven beyond a reasonable doubt.  We are mindful that this court is not to weight the evidence but determine, if believed, the evidence is adequate.  Accordingly, we find no merit to the fifth assignment of error.  It is hereby overruled.

## ASSIGNMENT OF ERROR SIX - MANIFEST WEIGHT OF THE EVIDENCE

{¶94} Appellant contends that his conviction for having a weapon under disability is against the manifest weight of the evidence, given the lack of evidence to establish Trooper Large's qualifications to opine on the operability of the gun found in Appellant's car.  Notwithstanding the

---

[4] The defense motion was made at the close of the State's case.  Appellant testified on his own behalf. While his later testimony related to the element of identity may have bolstered the State's case, it is not to be considered.

admissibility of the testimony, Appellant asserts the testimony is unreliable and carries little weight. Furthermore, Appellant contends that the individuals who created the lab report or tested the drugs found in his car were not subject to cross-examination to ensure the reliability of the tests. Thus, Appellant contends his convictions on the drug offenses are against the manifest weight of the evidence.

## STANDARD OF REVIEW

{¶95} In determining whether a criminal conviction is against the manifest weight of the evidence we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction. *See State v. Hess,* 4th Dist. Meigs No. 20CA1, 2021-Ohio-1248, at ¶ 15; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119; *State v. Phillips*, 4th Dist. Scioto No. 18CA3832, 2018-Ohio-5432, ¶ 23.

{¶96} To satisfy its burden of proof, the state must present enough substantial credible evidence to allow the trier of fact to conclude that the state had proven all the essential elements of the offense beyond a

reasonable doubt. *See Hess, supra,* at ¶ 16; *State v. Smith,* 2020-Ohio-5316, 162 N.E.3d 898, ¶ 31 (4th Dist.), citing *State v. Eskridge,* 38 Ohio St.3d 56, 526 N.E.2d 304, syllabus (1988). However, it is the role of the jury to determine the weight and credibility of evidence. *See State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales,* 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.*; *State v. Koon,* 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 18.

## LEGAL ANALYSIS

{¶97} In sum, Appellant contends that Trooper Large's testimony on the operability of the firearm discovered in his vehicle and the results of the lab reports, conducted by someone other than Trooper Large, were unreliable and carried little weight. Thus, Appellant asserts that his convictions for Having Weapons While Under Disability and for the misdemeanor drug offenses are against the manifest weight of the evidence.

{¶98} We have previously found no error due to defense counsel's failure to object to Trooper Large's testimony as to operability. As set forth above, pursuant to R.C. 2923.13(B)(2), circumstantial evidence of operability by an individual who has exercised control over a firearm is sufficient. Trooper Large was not held out as an expert as to the operability of the firearm. We also found that trial counsel was not ineffective for failing to object to the trooper's testimony concerning the lab report results and that failing to demand the chemist appear and testify at trial may have been reasonable trial strategy.

{¶99} The trial transcript reflects that the prosecutor showed Trooper Large photographs he had taken of the drugs he had confiscated from Appellant's vehicle. Trooper Large identified and authenticated the photographs. Trooper Large testified that he had the drugs tested at the Ohio State Highway Patrol Lab. The prosecutor asked Trooper Large to read from the reports. The reports were entered into evidence and the jury could read the name of the chemist who performed the drug testing and prepared the reports.

{¶100} It was up to the jury to determine the weight to be given the evidence. Having reviewed the record, we cannot conclude that the trier of fact lost its way when it convicted Appellant of all counts in this case. The

jurors could have reasonably believed that based on Trooper Large's testimony, the firearm seen in the photographs was operable. And they could have reasonably believed that the drug testing reports which Trooper Large read from, signed by another person, contained accurate findings. Any question about the reasonableness of the inferences to be drawn from that evidence was an issue of weight rather than admissibility. *See State v. Irvine,* 9th Dist. Summit No. 28998, 2019-Ohio-959, at ¶ 31.

{¶101} " 'A reviewing court should not disturb the fact-finder's resolution of conflicting evidence unless the fact-finder clearly lost its way.' " *State v. Newman,* 4th Dist. Scioto No. 14CA3658, 2015-Ohio-4283, 45 N.E.3d 624, ¶ 56, quoting, *State v. Davis,* 4th Dist. Washington No. 09CA28, 2010-Ohio-555, at ¶ 16-17. We do not find this to be the exceptional case in which the evidence weighs heavily against the convictions. Accordingly, we find no merit to the sixth assignment of error. It is hereby overruled.

### ASSIGNMENT OF ERROR SEVEN - SENTENCE

{¶102} Appellant was sentenced to a prison term of 36 months for Having Weapons While Under Disability, a felony of the third degree. However, Appellant contends that given his record, a community control sentence would have been more appropriate. Appellant contends that there

are numerous factors under R.C. 2929.12 that mitigate against a prison

sentence, specifically: (1) the fact of his mental illness; (2) the fact that his

prior felony conviction is not recent; (3) the fact that his current drug

offenses were not felony offenses; and (4) the fact that he did not cause

injury to persons or property. For these reasons, Appellant concludes the

trial court should have sentenced him to community control instead of a

prison term.

STANDARD OF REVIEW

{¶103} Appellate review of felony sentences generally employs the

standard of review set forth in R.C. 2953.08. *See State v. Wright,* 4th Dist.

Highland No. 2020-Ohio-5195, at ¶ 5; *State v. Prater,* 4th Dist. Adams No.

18CA1069, 2019-Ohio-2745, at ¶ 12, citing *State v. Graham,* 4th Dist.

Adams No. 17CA1046, 2018-Ohio-1277, at ¶ 13. R.C. 2953.08(G)(2)

specifies that an appellate court may increase, reduce, modify, or vacate and

remand a challenged felony sentence if the court clearly and convincingly

finds either:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

{¶104} "[C]lear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Thus, an appellate court may vacate or modify a sentence if the court concludes, by clear and convincing evidence, the record does not support the sentence. *State v. Bowling,* 4th Dist. Jackson No. 19CA2, 2020-Ohio-813, ¶ 6.

{¶105} " ' "[A] sentence is generally not contrary to law if the trial court considered the R.C. 2929.11 purposes and principles of sentencing as well as the R.C. 2929.12 seriousness and recidivism factors, properly applied postrelease control, and imposed a sentence within the statutory range." ' " *Allen, supra,* at ¶ 14, quoting *State v. Perry*, 4th Dist. Pike No. 16CA863, 2017-Ohio-69, ¶ 21, quoting *State v. Brewer*, 2014-Ohio-1903, 11 N.E.3d 317, ¶ 38 (4th Dist.).

{¶106} A trial court is required only to "carefully consider" the factors in R.C. 2929.11 and R.C. 2929.12 when imposing sentence, and is not required to make any "findings," or state "reasons" regarding those

considerations.  *See State v. Allen,* 4th Dist. Pickaway No. 19CA31, 2021-Ohio-648, at ¶ 13; *State v. Mathis,* 109 Ohio St. 3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38; *State v. Kulchar,* 4th Dist. Athens No. 10CA6, 2015-Ohio-3703, ¶ 47.  "And on review, 'R.C. 2953.08(G)(2)(b) * * * does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12.' "  *Allen, supra*, quoting *State v. Jones,* Slip Opinion No. 2020-Ohio-6729, at ¶ 39.

## LEGAL ANALYSIS

{¶107} R.C. 2929.11 sets forth the overriding purposes of felony sentencing, which are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local resources.  R.C. 2929.11(A).  In fashioning a sentence, the court shall consider the non-exhaustive list of factors under R.C. 2929.12.

{¶108} Appellant has emphasized R.C. 2929.12(C)(3):  "In committing the offense, the offender did not cause or expect to cause physical harm to any person or property."; and, R.C. 2929.12(C)(4):  "There are substantial grounds to mitigate the offender's conduct, although the

grounds are not enough to constitute a defense." Beginning with the latter, Appellant argues the trial court did not consider his mental illness as a mitigation of his conduct. In *State v. D-Bey*, 8th Dist. Cuyahoga No. 109000, 2021-Ohio-60, the defendant made a similar argument.

{¶109} D-Bey contended that the trial court failed to give consideration to his mental health, given that his conduct was caused by an episode of mental illness. *D-Bey* pointed out that the trial court did not even comment on the fact that he had received mental health services, but instead focused on his criminal history. However, the 8th District observed that D-Bey's mental health was just one factor for the trial court to consider in determining an appropriate sentence. Based on the record, *D-Bey* was unable to demonstrate that the trial court failed to consider the purposes and principles of sentencing under R.C. 2929.11 or the sentencing factors under R.C. 2929.12 when sentencing him. The trial court was not required to demonstrate how its sentence served each of the purposes and principles of sentencing or to identify or explain its evaluation of each relevant sentencing factor in order to comply with R.C. 2929.11 and 2929.12. *Id*. at ¶ 74.

{¶110} *D-Bey* also discussed the Supreme Court of Ohio's recent decision in *Jones, supra.* Accordingly, the 8th District found it could not review D-Bey's sentences to determine whether they are "excessive" or

otherwise not "supported by the record under R.C. 2929.11 and 2929.12."

*Id.* at ¶ 39. The 8th District found that even if D-Bey's sentences were

subject to such a review, it would find no reversible error. The record

reflected that the trial court considered the purposes and principles of

sentencing under R.C. 2929.11, the relevant sentencing factors under R.C.

2929.12, the PSI and all the other relevant information presented at (or prior

to) D-Bey's sentencing hearing.

{¶111} In this case, there is no dispute that Appellant's sentence is

within the statutory range. Furthermore, the record demonstrates that at

Appellant's sentencing the trial court considered the principles and purposes

as elaborated in R.C. 2929.11 and the factors under R.C. 2929.12. The

court's consideration is demonstrated in both the sentencing transcript and

the sentencing entry. While there was a concern regarding mental health

issues in the beginning of these proceedings, we note Appellant has not

presented evidence of diagnosis of any mental health condition at the time of

the offenses, nor at trial, and he was found competent to stand trial.[5]

{¶112} While it is certainly laudable that Appellant's drug offenses

were not felonies, his prior felony was not recent, and no person or property

---

[5] Dr. Edwards' competency report noted at page 4 that, "[T]he defendant did not report symptoms of mental conditions over the course of the assessment. The totality of the evidence does not support psychological symptoms were objectively evident nor was it apparent that psychological processes interfered with the defendant's performance on competency-relevant areas of questioning * * *."

was harmed, " ' [i]n imposing a sentence it is the role of the trial court to determine the weight afforded to any particular statutory factors, mitigating grounds, or other relevant circumstances.' " *State v. Loy,* 4th Dist. Washington No. 19CA21, 2021-Ohio-403, at ¶ 36, quoting *State v. Pitzer,* 4th Dist. Highland No. 19CA23, 2020-Ohio-4322, ¶ 19.  And, " '[s]imply because the court did not balance the factors in the manner appellant desires does not mean * * * that clear and convincing evidence shows that the court's findings are not supported by the record.' " *Pitzer* at ¶ 20, quoting *State v. Butcher*, 4th Dist. Athens No. 15CA33, 2017-Ohio-1544, ¶ 87.  *See also Allen, supra,* at ¶ 18 (At best, we find Appellant's arguments are a mere disagreement with the court's balancing of the statutory factors, which is not enough to show that the sentence is clearly and convincingly not supported by record.  *See State v. Butcher*, 4th Dist. Athens No. 15CA33, 2017-Ohio-1544, ¶ 87.)  Similarly, just because Appellant disagrees with the trial court's balancing of the statutory factors pertinent to his case does not mean Appellant's sentence is clearly and convincingly not supported by the record.  Based on the foregoing, we find no merit to Appellant's seventh assignment of error.  It is hereby overruled.

CONCLUSION

{¶113} We have found no merit to the arguments asserted in

Appellant's seven assignments of error challenging the trial court

proceedings, his trial, and his sentence.  Accordingly, all assignments of

error are hereby overruled.  The judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J., Concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**